**Jose Martin AVELAR–CRUZ Petitioner,**

v.

**Janet RENO, as Attorney General of the United States; Doris Meissner, as Commissioner of the Immigration and Naturalization Service; Brian Perryman, as Chicago District Director of the Immigration and Naturalization Service; and the Immigration and Naturalization Service, Defendants.**

**No. 98 C 1193.**

United States District Court, N.D. Illinois, Eastern Division.

April 27, 1998.

Maria Alma Alvarado, Lisa J. Palumbo, Diana White, Legal Assistance Foundation of Chicago, Chicago, IL, for Jose Martin Avelar Cruz, petitioner.

John Frederick Hurlbut, United States Attorney's Office, Chicago, IL, for Janet Reno, Doris Meissner, Brian Perryman and Immigration and Naturalization Service, respondents.

## MEMORANDUM OPINION AND ORDER

CONLON, District Judge:

Jose Martin Avelar–Cruz ("Avelar–Cruz") petitions for writ of habeas corpus pursuant to 28 U.S.C. § 2241, Art. I, § 9, cl. 2 of the Constitution, and 28 U.S.C. § 1331. He seeks review of a final order of deportation. Avelar–Cruz names Janet Reno, Attorney General of the United States; Doris Meissner, Commissioner of the Immigration and Naturalization Service ("the INS"); Brian Perryman, Chicago District Director of the INS; and the INS, as respondents.

### BACKGROUND

Avelar–Cruz is a twenty-five year old citizen of Mexico who entered the United States in 1975 without inspection. Avelar–Cruz became a temporary resident under the amnesty provisions of 8 U.S.C. § 1255a on September 25, 1987. On May 10, 1989, Avelar–Cruz became a lawful permanent resident alien.

On September 7, 1993, Avelar–Cruz was convicted of possession with intent to deliver and delivery of a controlled substance (each offense involving less than one gram of cocaine). He was sentenced to consecutive terms of three and four years in state prison. The INS subsequently issued an order to show cause alleging that Avelar–Cruz was deportable pursuant to 8 U.S.C. § 1251(a)(2)(A)(iii), as an alien convicted of an aggravated felony, and 8 U.S.C. § 1251(a)(2)(B)(i) as an alien convicted of a controlled substance violation.

In a deportation hearing before an immigration judge, Avelar–Cruz contested his deportability. The INS introduced certified copies of Avelar–Cruz' narcotics convictions.

On June 20, 1994, the immigration judge found Avelar–Cruz deportable on both charges contained in the order to show cause. The immigration judge found Avelar–Cruz statutorily ineligible for a waiver under 8 U.S.C. § 1182(c) because Avelar–Cruz had not accumulated seven years of domicile in the United States following his lawful admission.[1] Consequently, Avelar–Cruz was ordered deported to Mexico. On November 14, 1994, the Board of Immigration Appeals ("BIA") affirmed this decision.

Avelar–Cruz challenged this decision in the United States Court of Appeals for the Seventh Circuit. On June 27, 1995, the Seventh Circuit held that for purposes of a waiver under 8 U.S.C. § 1182(c), Avelar–Cruz' lawful domicile in the United States began on September 25, 1987 when he became a temporary resident. Therefore, the court granted Avelar–Cruz' petition for review and remanded the case to the BIA. *See Avelar–Cruz v. INS*, 58 F.3d 338, 341 (7th Cir.1995). On February 7, 1996, the BIA remanded the proceedings to the immigration judge to adjudicate Avelar–Cruz' application for a waiver.

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"). Section 440(d) of the AEDPA amended 8 U.S.C. § 1182(c) in part by making aliens who are "deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D)" ineligible for a waiver.

On November 18, 1996, the immigration judge held that because of Avelar–Cruz' prior narcotics convictions, he was statutorily ineligible for a waiver under 8 U.S.C. § 1182(c) (as amended by AEDPA § 440(d)). The immigration judge ordered Avelar–Cruz deported to Mexico. On January 8, 1998, the BIA dismissed Avelar–Cruz' appeal, relying on the Attorney General's decision in *Matter*

---

**1.** Prior to enactment of the AEDPA, criminal aliens could seek a discretionary waiver of deportation under section 212(c) of the INA. Section 212(c) stated in relevant part:

> Aliens lawfully admitted for permanent residence who temporarily proceed abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General ....

8 U.S.C. § 1182(c).

*of Soriano,* Interim Decision No. 3289, 1996 WL 426888 (BIA 1996, A.G.1997). Based on this final order of deportation, the INS ordered Avelar–Cruz to report for deportation on February 26, 1998. On February 25, 1998, Avelar–Cruz filed this petition for writ of habeas corpus.

Avelar–Cruz is presently in the custody of the Immigration and Naturalization Service; he contends the immigration judge's retroactive application of § 440(d) of the AEDPA during his deportation hearing denied him due process and denied him his statutory right to apply for a waiver of deportation under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 et seq. Avelar–Cruz also contends he has been denied equal protection as a result of the decision in *Matter of Fuentes–Campos,* Int. Dec. No. 3318, 1997 WL 269368 (BIA 1997) (§ 440(d) applies to deportation proceedings but not exclusion proceedings).

### DISCUSSION

With the exception of the equal protection claim, this court recently addressed all the issues raised by Avelar–Cruz' petition in a similar case. *See Laguerre v. Reno,* 1998 WL 100238 (N.D.Ill. Feb.17, 1998). Where the issues overlap, the court finds no reason to depart from its opinion in *Laguerre.*

### I. JURISDICTION

The court must first address whether the jurisdictional restrictions enacted by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), P.L. 104–208, Div. C, 110 Stat. 3009 (1996), deprive it of subject matter jurisdiction over Avelar–Cruz' petition for writ of habeas corpus. Avelar–Cruz alleges jurisdiction under 28 U.S.C. § 2241, Art. I, § 9, cl. 2 of the Constitution, and 28 U.S.C. § 1331. Respondents contend that section § 242(g) of the INA, 8 U.S.C. § 1252(g), as amended by § 306(a) of IIRIRA, requires dismissal of the petition for lack of subject matter jurisdiction. Avelar–Cruz asserts, in essence, that despite IIRIRA's significance for judicial review of final orders of deportation, the court

retains jurisdiction to consider the merits of habeas petitions pursuant to § 2241 because Congress did not affirmatively repeal habeas review under that statute. Alternatively, Avelar–Cruz invokes jurisdiction under the Suspension Clause of Article 1, section 9, clause 2 of the Constitution.

### A. LEGISLATIVE BACKGROUND

The jurisdictional provisions of the INA have undergone a rapid succession of legislative amendments, all aimed at curtailment of federal court jurisdiction over INS administrative decisions and adjudications. In particular, Congress has taken steps apparently intended to limit federal court jurisdiction over petitions for habeas corpus involving INS matters. First, Congress enacted the AEDPA on April 24, 1996. Section 404(e) of the AEDPA eliminated the INA provision governing habeas corpus review of deportation proceedings. Formerly, INA § 106(a)(10) provided: "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." 8 U.S.C. § 1105(a)(10) (1994). Section 404(a) of the AEDPA replaced § 106(a)(10) with the following provision: "Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), (D) [of the INA] ... shall not be subject to review by any court." 110 Stat. 1214, 1276–77.

Second, on September 30, 1996, Congress enacted IIRIRA. Pub.L. No. 104–208, Div. C, 110 Stat. 3009 (1996). IIRIRA repealed § 106 of the INA and replaced it with a new § 242 entitled "Judicial Review of Orders of Removal." IIRIRA § 306, codified at 8 U.S.C. § 1252.[2] Specifically, IIRIRA § 306(a)(2)(C) replaced AEDPA § 404(a). The new provision reads: "Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense ...." INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C).

**2.** IIRIRA replaces the familiar term "deporta- tion" with the term "removal."

## B. APPLICABLE JURISDICTIONAL PROVISION

 Instead of relying on IIRIRA § 306(a)(2)(C), respondents premise their subject matter jurisdiction argument on the effect of IIRIRA's broad jurisdictional provision found in § 306(a). Section 306(a) creates a new section 242(g) of the INA, entitled "Exclusive Jurisdiction." 8 U.S.C. § 1252(g). The new section provides:

> Except as provided in this section and notwithstanding any other provisions of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

8 U.S.C. § 1252(g). Avelar–Cruz does not directly challenge respondents' argument that the language of this section encompasses his claims. Rather, Avelar–Cruz raises the issue whether his petition is governed by § 242(g), as opposed to IIRIRA's transitional rules, which the statute makes applicable to persons in deportation proceedings commenced before April 1, 1997. *See* IIRIRA § 309.

Avelar–Cruz' argument raises a question of statutory construction: whether IIRIRA § 242(g) or IIRIRA's transition provisions, specifically § 309(c)(4)(G), govern the court's subject matter jurisdiction over the petition. A resolution of this question depends on both the relative effective dates of IIRIRA's statutory provisions and on their substantive scope. In general, the effective date of IIRIRA's amendments is "the first day of the first month beginning more than 180 days after the date of enactment [September 30, 1996]" or April 1, 1997. § 309(a). Yet, § 309(c) creates transitional rules delaying implementation of its amendments for aliens in exclusion or deportation proceedings before April 1, 1997. In addition, § 309(a) excepts §§ 303(b)(2), 306(c), 308(d)(2)(D), or 308(d)(5) from the general effective date. The effective date for § 242(g) is found in § 306(c)(1). The section, as amended by technical corrections on October 11, 1996,

Pub.L. 104–302, 110 Stat. 3656, 3657, provides:

(c) EFFECTIVE DATE

(1) IN GENERAL—Subject to paragraph (2), the amendments made by subsections (a) and (b) shall apply as provided under section 309, except that subsection (g) of section 242 of the Immigration and Nationality Act (as added by subsection(a)), shall apply without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings under such Act.

IIRIRA § 306(c)(1). Although manifesting a clear intent that the provision be applied retroactively, Congress failed to provide a date for § 242(g). Thus, the question arises whether § 242(g) was meant to take effect on the date of IIRIRA's enactment, as opposed to April 1, 1997.

The Seventh Circuit resolved this issue in *Lalani v. Perryman,* 105 F.3d 334 (7th Cir. 1997) *(per curiam ).* In *Lalani,* the government argued that § 242(g) took effect on the date of enactment and thus deprived the court of jurisdiction. The Seventh Circuit rejected this construction of the statute. The court recognized that to interpret the statute in this manner would render meaningless "the provisions of the IIRIRA [the transition rules] deferring application of its procedures for six months ... because [the court] would have no jurisdiction in all cases immediately." *Id.* at 336. Noting that § 306(c) refers back to § 309, the Seventh Circuit held that § 242(g) would not take effect until April 1, 1997—the general effective date. Finally, unlike the other subsections, § 242(g) applies retroactively to past and pending deportation proceedings.

IIRIRA's transition provisions delay the implementation of IIRIRA's amendments governing judicial review, including § 306(a)(2)(C). *See Turkhan v. INS,* 123 F.3d 487, 489 (7th Cir.1997) ("Section 309 of the II[RI]RA ... makes these new judicial review provisions inapplicable to aliens who are in deportation proceedings [before] April 1, 1997"); *see also Yang v. INS,* 109 F.3d 1185, 1191 (7th Cir.1997) ("the II[RI]RA covers removal proceedings begun during or

after ... April"). The transition provisions state, in relevant part:

(c) TRANSITION FOR ALIENS IN PROCEEDINGS -

(1) GENERAL RULE THAT NEW RULES DO NOT APPLY—Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings before [April 1, 1997]—

(A) the amendments made by this subtitle shall not apply, and

(B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

. . . .

(4) TRANSITIONAL CHANGES IN JUDICIAL REVIEW—In the case in which a final order of exclusion or deportation is entered more than 30 days after the date of the enactment of this Act [after October 30, 1996] notwithstanding any provision of section 106 of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act) to the contrary—

. . . .

(G) there shall be no appeal in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act (as in effect on the date of enactment of this Act), or any offense covered by section 241(a)(2)(A)(ii) of such Act (as in effect on such date) for which both predicate offenses are without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i) of such Act (as so in effect).

IIRIRA § 309(c). Provided Avelar–Cruz satisfies the criteria set forth above, he may benefit from the delayed implementation of the IIRIRA's more restrictive judicial review provisions.

Avelar–Cruz meets the statutory timing requirements for application of the transitional rules governing judicial review. First, his deportation proceedings commenced before April 1, 1997. Second, the deportation order became final after October 30, 1996. On remand from the Seventh Circuit, the BIA ultimately dismissed Avelar–Cruz' appeal on January 8, 1998. On similar facts, courts have determined that § 309(c)(4)(G) is applicable. *See, e.g., Turkhan,* 123 F.3d at 488—89 (BIA denied motion to reopen on May 9, 1997); *Sandoval v. Reno,* Civ. No. 97–7289, 1997 WL 839465, *4–5, 1997 U.S. Dist. Lexis 20976, *12–15 (E.D.Pa. Dec. 30, 1997) (BIA dismissed appeal on July 16, 1997). Finally, because the transition rules only supersede contrary provisions of the pre-IIRIRA law, § 440(a) of the AEDPA (INA § 106(a)(10)) would also apply. *See Turkhan,* 123 F.3d at 489.

Respondents urge that application of § 242(g) is required and it precludes habeas review of Avelar–Cruz' petition. The difficulty with this argument is that if § 242(g) operated to divest the district court of jurisdiction over Avelar–Cruz' habeas petition, it would render superfluous IIRIRA's specific provision governing jurisdiction for review of criminal alien deportations. *See* § 306(a)(2)(C), codified at 8 U.S.C. § 1252(a)(2)(C). In addition, retroactive application of § 242(g) would thwart application of the related transition provision for aliens in deportation proceedings. *See* § 309(c)(4)(G). Two familiar maxims of statutory construction support application of the specific IIRIRA provision. First, the specific takes precedence over the general. *Resolution Trust Corp. v. Gallagher,* 10 F.3d 416, 420 (7th Cir.1993). Second, a court is to give effect to all statutory provisions whenever possible. *See In re Lifschultz Fast Freight Corp.,* 63 F.3d 621, 628 (7th Cir.1995); *see also United States v. Wagner,* 29 F.3d 264, 266 (7th Cir.1994).

IIRIRA § 306(a)(2)(C) is entitled "Orders Against Criminal Aliens" and is located in a subsection of INA § 242 entitled "Matters Not Subject to Judicial Review." The language of this subsection mirrors the language of § 242(g). For instance, both provisions contain the core phrase "notwithstanding any other provision of law, no court shall have jurisdiction." Just as

§ 242(g) seems gauged to divest federal courts of jurisdiction over all judicial review of administrative decisions or actions of the attorney general, including habeas corpus petitions, § 306(a)(2)(C) seems to divest federal courts of all judicial review of criminal alien deportations under enumerated sections. If the scope of § 242(g) is as broad as respondents claim, its application would render § 306(a)(2)(C) meaningless. Thus, in order to give full effect to the precise language of § 306(a)(2)(C), and the related transition provision, § 309(c)(4)(G), the court finds Avelar–Cruz' claims beyond the scope § 242(g). Avelar–Cruz' petition seeks habeas review of a final order of deportation based on his criminal alien status pursuant to INA §§ 241(a)(2)(A)(iii) and 241(a)(2)(B)(i). His petition is only incidentally directed at a "decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." § 242(g). Accordingly, the broad terms of § 242(g) do not govern this case.

## C. JURISDICTION PURSUANT TO § 2241

■ The next inquiry is whether the court retains subject matter jurisdiction over Avelar–Cruz' petition pursuant to 28 U.S.C. § 2241, despite the jurisdiction narrowing language of both § 440(a) and its IIRIRA counterpart, § 309(c)(4)(G). No federal appellate court has yet directly reached this issue. A number of appellate courts have addressed the constitutionality of § 440(a)'s restrictions on appellate review. In concluding that Congress could constitutionally divest the appellate courts of jurisdiction over direct appeals from final deportation orders, a number of courts have assumed the continuing availability of federal habeas relief. *See, e.g., Chow v. INS,* 113 F.3d 659, 669 (7th Cir.1997) ("Thus, we cannot say that section 106(a) of the INA is Chow's only avenue of judicial review, and because other avenues for relief remain open, we hold that section 440(a) does not violate Chow's due process rights"); *Kolster v. INS,* 101 F.3d 785, 790–91 (1st Cir.1996); *Hincapie–Nieto v. INS,* 92 F.3d 27, 30–31 (2d Cir.1996); *Salazar–Haro v. INS,* 95 F.3d 309, 311 (3d Cir.1996). Further, a growing majority of district courts

across the nation, including this court, have already concluded that federal habeas relief remains available under § 2241. *Gutierrez–Martinez,* 989 F.Supp. 1205 (N.D.Ga.1998); *Morisath v. Smith,* 988 F.Supp. 1333 (W.D.Wash.1997); *Mojica v. Reno,* 970 F.Supp. 130 (E.D.N.Y.1997); *Ozoanya v. Reno,* 968 F.Supp. 1 (D.D.C.1997); *Vargas v. Reno,* 966 F.Supp. 1537 (S.D.Cal.1997); *Yesil v. Reno,* 958 F.Supp. 828 (S.D.N.Y.1997), *reconsid. den.,* 973 F.Supp. 372 (S.D.N.Y.1997); *Dunkley v. Perryman,* No. 96 C 3570, 1996 WL 464191 (N.D.Ill. Aug.7, 1996); *Mbiya v. INS,* 930 F.Supp. 609 (N.D.Ga.1996); *Powell v. Jennifer,* 937 F.Supp. 1245 (E.D.Mich. 1996). Finally, in *Sandoval,* the district court reached the identical conclusion with respect to IIRIRA § 309(c)(4)(G). 1997 WL 839465, 1997 U.S. Dist. Lexis 20976.

The conclusion that habeas jurisdiction persists under § 2241 is mandated, in large part, by the Supreme Court's recent opinion in *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). In *Felker,* the Supreme Court addressed the effects of AEDPA's gatekeeping mechanism on the Court's original jurisdiction over habeas petitions. The challenged AEDPA provisions were designed to restrict the filing of successive habeas petitions. The Supreme Court premised its analysis of the AEDPA provision on the presumption against repeal of habeas corpus jurisdiction by implication. *Ex parte Yerger,* 8 Wall. 85, 19 L.Ed. 332 (1868). Finding no affirmative mention of the Court's authority to hear habeas petitions in Title I of the AEDPA or in the specific section restricting the Supreme Court's appellate jurisdiction, the Court declined to find a repeal of its jurisdiction over original petitions pursuant to § 2241 or § 2254.

Felker's presumption against repeal by implication compels the conclusion that the general language of § 440(a) does not eliminate subject matter jurisdiction over habeas corpus petitions pursuant to § 2241. *See, e.g., Yesil,* 958 F.Supp. at 838 ("Sections 401 and 440 of the AEDPA do not state that they repeal or amend section 2241; indeed, they do not mention section 2241 at all"); *Mojica,* 970 F.Supp. at 160 ("The AEDPA does not amend, or even mention, section 2241 of Title

28"). *Felker* applies with even greater force in the context of § 309(c)(4)(G) because Congress substituted the narrower term "appeal" for § 440(a)'s "review." *See Sandoval*, 1997 WL at 7, 1997 U.S. Dist. Lexis at 22–23; *see also Mojica*, 970 F.Supp. at 160. Accordingly, neither § 440(a), nor § 309(c)(4)(G), operates to preclude this court's exercise of jurisdiction over Avelar–Cruz' petition pursuant to § 2241.

Finally, the court must determine whether Avelar–Cruz meets the jurisdictional requirement of § 2241. First, Avelar–Cruz must be "in custody under or by color of the authority of the United States." 28 U.S.C. § 2241(c)(1). It is undisputed Avelar–Cruz is presently in INS custody. Second, Avelar–Cruz' petition alleges he is "in custody in violation of the Constitution [and] laws ... of the United States." § 2241(c)(3). Accordingly, Avelar–Cruz has met the "in custody" jurisdictional requirement of 28 U.S.C. § 2241.

## II. RETROACTIVE APPLICATION OF § 440(d)

### A. PRESUMPTION AGAINST RETROACTIVITY AND DUE PROCESS

■ Prior to the passage of the AEDPA, Avelar–Cruz was eligible to apply for a waiver of deportation pursuant to § 212(c) of the INA. 8 U.S.C. 1182(c) (1994). Section 212(c) authorized the Attorney General to grant waivers of deportation to residents lawfully domiciled in the United States for at least seven years. In other words, the Attorney General could exercise her discretion to allow permanent residents, like Avelar–Cruz, to remain in the United States even after commission of a deportable offense. The enactment of § 440(d) of the AEDPA significantly reduced the Attorney General's discretion to grant applications for waiver of deportation. Specifically, the amendment rendered ineligible any alien who had committed: an aggravated felony; a controlled substance offense; certain firearm offenses; convictions of two crimes of moral turpitude; or other miscella-

neous crimes. AEDPA § 440(d), 110 Stat. 1214, 1277 (amending INA § 212(c), 8 U.S.C. § 1182(c)).

Avelar–Cruz' convictions placed him in the aggravated felon and controlled substance offense categories of § 440(d). Relying on Avelar–Cruz' ineligibility for discretionary relief under AEDPA § 440(d), the immigration judge denied his application for a waiver of deportation pursuant to former INA § 212(c). The BIA affirmed on this basis. Avelar–Cruz argues that the application of § 440(d) to his case is impermissibly retroactive and violates the due process clause. Section 440(d) can be viewed as retroactive as applied to Avelar–Cruz in two respects. First, § 440(d) could be retroactive as applied to a pending application for relief. As discussed above, Avelar–Cruz had a waiver application pending on the date of the AEDPA's enactment. Second, § 440(d) could be retroactive as applied to criminal convictions that predate the enactment of the AEDPA.[3] Avelar–Cruz' criminal convictions predate the enactment of the AEDPA.

In *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court reaffirmed the time-honored presumption against statutory retroactivity. In determining whether a statute applies retroactively, the core inquiry is "whether the new provision attaches new legal consequences to events completed before its enactment." 511 U.S. at 269–70, 114 S.Ct. 1483. *Landgraf* established a two-part test to guide a court's retroactivity analysis. First, the court must "determine whether Congress has expressly prescribed the statute's proper reach." *Id.* at 1505. The "requirement that Congress first make its intention clear helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness." *Id.* at 268, 114 S.Ct. 1483. Provided Congress has included an express command specifying the statute's temporal reach, there is no need to further advance the inquiry. If, however, Congress failed to specify

---

**3.** The Seventh Circuit expressly left this issue open in *Reyes–Hernandez*, where the court stated it need not address the applicability of sections 440(a) and (d) where deportability was deter-

mined in a contested proceeding or where the criminal convictions or criminal acts occurred before the AEDPA was passed. 89 F.3d at 493.

the statute's temporal reach, the court must consider "whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.*

In the course of its survey of the jurisprudential history of the presumption against retroactivity, the Supreme Court identified a number of situations where application of new statutes to antecedent events is "unquestionably proper," even in the absence of a clear Congressional command. 511 U.S. at 273, 114 S.Ct. 1483. The first illustration offered was statutes that authorize or affect the propriety of prospective relief, such as statutes altering the conditions for injunctive relief. Statutes creating or repealing jurisdiction were another notable example. The Court stated "[w]e have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Id.* at 274, 114 S.Ct. 1483. Changes in procedural rules were another apt illustration. Because of the "diminished reliance interests in matters of procedure," these rules "may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Id.* at 275, 114 S.Ct. 1483. In sum, a statute does not have retroactive effect "merely because it is applied in a case arising from conduct antedating the statute's enactment ... or upsets expectations based in prior law." *Id.* at 269–70, 114 S.Ct. 1483.

As an initial matter, Congress did not specify the temporal reach of § 440(d). The AEDPA contains no effective date provision governing § 440(d). The section is therefore deemed effective on the date of enactment. Consequently, this court must address the second part of the *Landgraf* analysis: whether § 440(d) violates the presumption against retroactivity. Respondents argue that § 440(d) may be constitutionally applied to prior convictions because its amendment to § 212(c) is analogous to a jurisdictional statute or to one affecting the propriety of prospective relief. According to this interpretation, § 440(d) operates only prospectively, as a limitation on the Attorney General's authority to grant discretionary relief to a specified class of candidates for automatic deportation. Respondents find general support in *Landgraf* for this argument. Avelar–Cruz characterizes the effect of § 440(d) as retroactive. In Avelar–Cruz' view, the amendment to § 212(c) stripped him of a substantive cause of action—the right to apply for discretionary relief from deportation. Avelar–Cruz relies on the Supreme Court's recent decisions in *Hughes Aircraft Co. v. United States ex rel. Schumer,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) and *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Respondents' interpretation of § 440(d)'s effect finds overwhelming support in the plain language of the statute and in relevant precedent. The full text of INA § 212(c), as amended by § 440(d), reads:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under § 1181(b) of this title. This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 1251(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1251(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 1251(a)(2)(A)(i) of this title.

8 U.S.C. § 1182(c). The provision plainly defines the contours of the Attorney General's discretion to grant discretionary relief. In other words, § 440(d) makes aliens convicted of enumerated crimes ineligible for relief by limiting the Attorney General's discretion. Nothing in the express language of the provision lends itself to the argument

that an application for a waiver is akin to a substantive cause of action. Indeed, unlike the statutory provisions at issue in *Hughes*, § 440(d) does not impair any rights Avelar–Cruz had when he committed the drug offenses for which he was convicted.[4] While at that time Avelar–Cruz could have applied for relief from automatic deportation, he could not have claimed a settled expectation in the ultimate granting of discretionary relief. In sum, § 440(d) simply scaled back the Attorney General's prospective discretion to grant a particular form of relief.

This conclusion is bolstered by relevant authority. In *Matter of Soriano*, Int. Dec. 3289 (A.G.Slip.Op. Feb. 21, 1997), the Attorney General addressed whether § 440(d) is retroactive as applied to pending cases. The Attorney General opined that § 440(d) applied to pending cases because it "does not impair a right, increase a liability, or impose new duties on criminal aliens." *Id.* at 4. In arriving at that conclusion, the Attorney General reasoned the relief sought in waiver applications is prospective in nature. She found support for this view in the Supreme Court's statement in *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), that: "The deportation hearing looks prospectively to the respondent's rights to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the respondent's right to remain." *Id.* at 5. Furthermore, she compared § 440(d) to a jurisdictional statute because it "speaks to the power of the Attorney General to waive deportation," just as jurisdictional statutes speak to the power of the court. *Id.* Thus, she concluded § 440(d) would not be retroactive as applied to pending cases.[5]

The federal appellate courts' analysis of the retroactivity of past Congressional amendments to § 212(c) is also instructive. Indeed, the AEDPA is not the first time Congress has rendered a class of felons ineligible for § 212(c) relief. The Immigration Act of 1990 rendered aggravated felons who served at least five years in prison ineligible to apply for a waiver. § 511(a), Pub.L. No. 101–649, 104 Stat. 4978, 5052 (1990). Aliens challenged the retroactivity of this provision as applied to convictions predating the enactment of the statute. The appellate · courts uniformly rejected the contention that its application violated the presumption against retroactivity. *See, e.g., Scheidemann v. INS*, 83 F.3d 1517 (3d Cir.1996); *Campos v. INS*, 16 F.3d 118 (6th Cir.1994); *Barreiro v. INS*, 989 F.2d 62 (1st Cir.1993); · *Buitrago–Cuesta v. INS*, 7 F.3d 291 (2d Cir.1993); *De Osorio v. U.S. Immigration and Naturalization Service*, 10 F.3d 1034 (4th Cir.1993). In describing the nature of the interest effected by the statute, the courts rejected any claim of a reliance interest in the opportunity to apply for a waiver of deportation. *Kolster v. INS*, 101 F.3d 785, 789 (1st Cir.1996) (citing cases). In particular, the Third Circuit in *Scheidemann* made the following decisive summary of the nature of discretionary relief under § 212(c):

> In this case, the consequences of petitioner's criminal conduct were clear at the time of that conduct and they remain unchanged today. He was subject to possible criminal sanctions and deportation. The only relevant change in the law relates to the permissible scope of the Attorney General's discretion to grant relief from one of those consequences. Like statutes altering the standards for injunctive relief, this

**4.** Both *Hughes* and *Lindh* are ultimately inapposite because they involved statutory provisions that added new legal consequences to a substantive cause of action. *Hughes* involved an amendment that expanded the scope of *qui tam* actions under the False Claims Act. The Court stated: "In permitting actions by an expanded universe of plaintiffs with different incentives, the 1986 amendment essentially creates a new cause of action...." 520 U.S. at ——, 117 S.Ct. at 1878. *Lindh* involved another section of the AEDPA, the section governing the standards applicable to habeas corpus petitions, 28 U.S.C. § 2254(d).

The Supreme Court noted that "the statue goes beyond 'mere' procedure to affect substantive entitlement to relief." 521 U.S. at ——, 117 S.Ct. at 2063. .

**5.** In keeping with the Seventh Circuit's decision in *Reyes–Hernandez*, the Attorney General did carve out a narrow exception to the rule that § 440(d) applies in pending cases to allow aliens who conceded deportability prior to the enactment of the AEDPA, and who had a colorable defense to deportability, to reopen their cases. A.G. Slip. Op. at 8.

change has only a prospective impact. It is not designed to remedy the past but only to affect petitioner's future status with respect to the legality of his presence in the United States. Like statutes constricting the jurisdiction of a judicial body, these changes speak only to the power of a public agency. Finally, like legislation altering procedural rights, the relevant amendments in this case regulate secondary rather than primary conduct and infringe on no significant reliance interest. Given the facts that petitioner's pre-1987 conduct clearly subjected him to deportation as well as criminal sanctions, and that § 212(c), as it then existed, offered relief from the former only at the unfettered discretion of the Attorney General, petitioner does not, and could not, contend that his conduct was undertaken in reliance on the then current version of § 212(c).

83 F.3d at 1523. Although the preclusive scope of § 440(d) is much broader than the scope of the 1990 amendment to § 212(c), the nature of discretionary relief remains the same. In both instances, "the availability of purely discretionary relief does not create substantive rights in otherwise deportable aliens." *Kolster*, 101 F.3d at 789.

Another relevant line of authority was recently discussed by the Seventh Circuit in *Chow v. INS*, 113 F.3d 659 (1997). In *Chow*, the Seventh Circuit faced the issue whether § 440(a)'s preclusion of appellate review violated the presumption against retroactivity as to pending cases and as to pre-AEDPA criminal conduct. In reaching the conclusion that § 440(a)'s withdrawal of judicial review did not "attach new legal consequences to the alien's [prior criminal] conduct," the court reasoned:

> Courts routinely hold that the INS may lawfully deport an alien under a statute which makes certain conduct a ground for deportation even if the alien engaged in the conduct before the statute went into effect. *Marcello v. Bonds*, 349 U.S. 302, 314, 75 S.Ct. 757, 764, 99 L.Ed. 1107 (1955) (allowing deportation based on conviction that was not a ground for deportation at the time the alien was convicted); *Hama-*

*ma v. INS*, 78 F.3d 233, 235–36 (6th Cir. 1996) (same); *Ignacio v. INS*, 955 F.2d 295, 298 (5th Cir.1992) (same); *United States v. Bodre*, 948 F.2d 28, 32–33 (1st Cir.1991) (same). Accordingly, making deportation a consequence of certain criminal acts does not attach new liabilities or penalties to those acts.

113 F.3d at 667. The present case presents an even stronger claim for a finding of no retroactive effect than did the cases cited in *Chow*. This is because § 440(d) does not go so far as to alter the primary grounds for deportation. Aliens in Avelar–Cruz' particular situation are subject to deportation for the same set of criminal offenses. In sum, " § 440(d) merely removes one potential means of avoiding deportation" for those offenses. *Gutierrez–Martinez*, 989 F.Supp. at 1210; *Vargas*, 966 F.Supp. at 1544.

Two courts have found § 440(d) impermissibly retroactive as applied to criminal conduct predating the enactment of the AEDPA. Both courts have evinced great concern that the provision upsets settled expectations which form the basis for guilty pleas entered by criminal aliens. *See, e.g., Sandoval*, 1997 WL at *11, 1997 U.S. Dist. Lexis at *35; *Mojica*, 970 F.Supp. at 176—78. While it is undeniable that immigration consequences may be a factor in a decision to plead guilty, this court is not convinced by *Sandoval* or *Mojica* that the availability of discretionary relief under § 212(c) is the sole or even a significant motivating factor in decisions to enter guilty pleas. It is a stretch to assume a criminal defendant would forgo a viable defense in order to enter a guilty plea to a crime that makes him subject to automatic deportation, simply for the opportunity to apply for discretionary relief. Nevertheless, one can imagine a scenario where § 440(d) would seem to frustrate the expectations of criminal aliens. *See Mojica*, 970 F.Supp. at 176. The presumption against retroactivity, however, affords no guarantee against upset expectations based in prior law. *Landgraf*, 511 U.S. at 268, 114 S.Ct. at 1499. Rather, the question is whether § 440(d) attaches new legal consequences to Avelar–Cruz' criminal convictions. For the reasons stated above, this court answers that question in the negative.

Avelar–Cruz acknowledges Congress had a legitimate basis for making discretionary waiver unavailable for aliens who commit certain crimes. Avelar–Cruz argues retroactive application of this policy to reach crimes committed before the AEDPA was enacted "violate[s] substantive due process norms." He conclusorily asserts Congress had no legitimate basis for denying aliens like him the opportunity to apply for a discretionary waiver. But Avelar–Cruz fails to demonstrate Congress acted irrationally when it sought to prevent *all* aliens convicted of aggravated felonies or controlled substance violations from obtaining waivers from orders of deportation.

## B. EQUAL PROTECTION

■ Section 440(d) of the AEDPA states the discretionary waiver "shall not apply to an alien who is *deportable* by reason of having committed [enumerated offenses]." (emphasis added). The Board of Immigration Appeals interprets the underlined language to mean that legal permanent resident aliens ("LPR aliens") in *deportation* proceedings are disqualified from applying for a waiver, while LPR aliens in *exclusion* proceedings based on the same offense may apply for a waiver. *See Matter of Fuentes–Campos*, Int. Dec. No. 3318, 1997 WL 269368 (BIA May 14, 1997). Avelar–Cruz argues the distinction drawn by *Fuentes–Campos* is not rationally related to a legitimate governmental interest and therefore violates the equal protection clause. To address Avelar–Cruz' claim, it is necessary to set out some basic principles and briefly trace the development of the law in this area.

Deportable aliens reside in the United States, but are subject to deportation. 8 U.S.C. § 1251(a). Excludable aliens may be denied *entrance* into the United States. 8 U.S.C. § 1182(a). In § 212(c) of the INA, Congress provided that excludable aliens who were legal permanent residents of the United States for seven years and who traveled abroad voluntarily and temporarily could be re-admitted at the discretion of the Attorney General. 8 U.S.C. § 1182(c). By its terms, the "waiver of exclusion" discretion given the Attorney General by § 212(c) ap-

plied only to excludable aliens seeking readmission to the United States. But in 1956, the BIA held that LPR aliens in deportation proceedings *who had previously traveled abroad* could apply for a waiver under § 212(c). The BIA reasoned that since those LPR aliens would have been eligible for discretionary relief at the time of readmission, discretionary relief could also be granted at a later juncture. *See Matter of G.A.,* 7 I. & N. Dec. 274 (BIA 1956). The BIA subsequently declined to extend § 212(c) discretionary relief to otherwise eligible LPR aliens who had *not* departed the country after being convicted. *See Matter of Arias–Uribe,* 13 I. & N. Dec. 696 (BIA 1971).

The discrepancy did not go unnoticed. In 1976, the Second Circuit held that in order to satisfy equal protection requirements, § 212(c) discretionary relief had to be available in *deportation* proceedings for LPR aliens who met the seven year requirement, *whether or not they traveled abroad after their convictions. Francis v. INS,* 532 F.2d 268 (2d Cir.1976). The court found that extending § 212(c) relief to deportees who had left the country after committing a deportable offense, but not to deportees who had remained, was irrational and therefore violated the equal protection component of the Fifth Amendment Due Process Clause. "[A]n alien whose ties with this country are so strong that he has never departed ... should receive at least as much consideration as an individual who may leave." *Id.* at 273; *see also Tapia–Acuna v. INS,* 640 F.2d 223, 225 (9th Cir.1981).

The rule in *Francis* was universally accepted by federal appellate courts, including the Seventh Circuit. *See, e.g., Leal–Rodriguez v. INS,* 990 F.2d 939, 949 (7th Cir. 1993). The INS adopted *Francis* nationwide so that all eligible LPR aliens who were ordered deported could ask the Attorney General to waive the ground for deportability under § 212(c). *See Matter of Silva,* 16 I. & N. Dec. 26 (BIA 1976). Congress never explicitly amended the INA to make § 212(c) applicable to LPR aliens in deportation proceedings. Rather, § 212(c) was judicially extended in order to comply with equal protection principles.

Effective April 24, 1996, § 440(d) of the AEDPA amended § 212(c) and expressly eliminated discretionary relief for LPR aliens who were convicted of certain crimes, including the crimes committed by Avelar–Cruz. As previously indicated, the amendment itself used the word "deportable." As a result, the BIA interpreted § 440(d) to apply only to deportable aliens and not to *excludable* aliens. Accordingly, the BIA ruled § 212(c) discretionary relief remained available for LPR aliens in exclusion proceedings. *See Matter of Fuentes–Campos*, Int. Dec. No. 3318, 1997 WL 269368 (BIA May 14, 1997).

Section 212(c) as amended by AEDPA § 440(d) was repealed by IIRIRA § 304(b). IIRIRA § 304(a)(7) consolidated deportation and exclusion proceedings into a single category of "removal" proceedings, eliminating the distinction Avelar–Cruz challenges in this case. However, IIRIRA does not apply to deportation proceedings pending as of April 1, 1997. *See* IIRIRA § 309(c)(1). Avelar–Cruz' deportation proceedings were pending as of April 1, 1997. Accordingly, IIRIRA cannot cure any harm suffered by Avelar–Cruz.

Avelar–Cruz argues the distinction drawn by *Fuentes–Campos* is not rationally related to a legitimate governmental interest and therefore violates the equal protection clause. Avelar–Cruz concedes that the equal protection analysis must proceed under the minimal "rational basis" test, but argues that under *Francis* no rational basis exists for treating LPR aliens who temporarily leave the country differently from otherwise similarly situated aliens who do not leave the country. Avelar–Cruz points out two courts have already found that denial of an LPR alien's application for waiver based on § 440(d) violates the equal protection clause where the application was denied in deportation proceedings (1) pending as of April 1, 1997 (*i.e.*, not governed by IIRIRA's repeal of § 440(d)) and (2) decided by the BIA after the May 14, 1997 *Fuentes–Campos* decision. *See Jurado–Gutierrez v. Greene*, 977 F.Supp. 1089 (D.Colo.1997); *Vargas v. Reno*, 966 F.Supp. 1537 (S.D.Cal.1997).

Respondents argue *Francis* is distinguishable because it found an equal protection violation based on the disparate treatment of two groups of *deportable* LPR aliens—those who had traveled abroad and returned after their convictions, and those who had never left the country. Respondents emphasize that both groups were in *deportation* proceedings. Adopting the reasoning of *Fuentes–Campos*, respondents suggest the rationale of *Francis* does not speak to the relative treatment of LPR aliens in deportation proceedings as compared to those in *exclusion* proceedings. In short, respondents contend Avelar–Cruz' equal protection challenge must fail because LPR aliens in deportation proceedings are not similarly situated to LPR aliens in exclusion proceedings.

Respondents argue it is well-established that excludable aliens and deportable aliens are not similarly situated, citing *Landon v. Plasencia*, 459 U.S. 21, 31, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). In that case, Plasencia was a legal permanent resident alien who was placed in an exclusion proceeding upon trying to re-enter the United States. Plasencia argued she was entitled to have the question of her admissibility litigated in a deportation proceeding, where she would be entitled to procedural protections and substantive rights not available in exclusion proceedings. The Ninth Circuit agreed, relying in part on *Kwong Hai Chew v. Colding*, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576 (1953). The Supreme Court reversed, stating:

> The reasoning of *Chew* was only that a resident alien returning from a brief trip has a right to due process just as would a continuously present resident alien. It does not create a right to identical treatment for these two differently situated groups of aliens.

*Landon*, 459 U.S. at 31, 103 S.Ct. 321.

Based on this statement, respondents conclude excludable LPR aliens and deportable LPR aliens are not similarly situated for purposes of the present equal protection challenge. But it will not do to transplant the "differently situated" language from *Landon* (a due process challenge) and apply it casually to all equal protection challenges involving deportation and exclusion proceedings, irrespective of the statute challenged. For purposes of the equal protection clause,

the question whether two groups on either side of a governmental classification are similarly situated is not decided in the abstract. Rather, courts must determine whether the two groups are similarly situated *with respect to the purpose of the law challenged.* "A reasonable classification is one which includes all persons who are similarly situated with respect to the purpose of the [law]." Gerald Gunther & Kathleen M. Sullivan, *Constitutional Law* 636—37 (13th ed.1997) (quoting Tussman & tenBroek, *The Equal Protection of the Laws,* 37 Calif.L.Rev. 341 (1949)). Accordingly, the threshold question is whether LPR aliens in deportation proceedings and LPR aliens in exclusion proceedings are similarly situated with respect to the purpose of AEDPA § 440(d).

There can be no doubt that with respect to the purpose of § 440(d), LPR aliens in deportation proceedings are similarly situated to LPR aliens in exclusion proceedings. Skimming the legislative history of the AEDPA, there appears to be no reason why Congress would have sought to restrict discretionary relief as to LPR aliens who committed enumerated offenses, but not curtail discretionary relief if those same LPR aliens thereafter leave the country and seek to re-enter. Indeed, *Vargas* and *Jurado–Gutierrez* rejected the differences between deportation and exclusion proceedings as irrelevant for purposes of the present equal protection analysis. *Vargas* states that drawing a distinction based on the name of the proceeding:

> ... does not respond to the arbitrariness of allowing LPR aliens who have left the U.S. for a short time to file for a waiver, while not allowing LPR aliens who have remained in the U.S. the same option. The fact that the proceedings have different names does not affect the fact that two similarly situated LPR aliens are receiving disparate treatment.

*Vargas,* 966 F.Supp. at 1546—47. *Jurado–Gutierrez* added the following:

> In view of *Francis* and *Vargas,* there appears to be no rational basis for applying the distinction made by the BIA. If petitioner had left the country for a visit to Mexico ... he would have been entitled to a § 212(c) discretionary hearing. Simply

because he did not leave the country, he was placed in deportation proceedings and denied a § 212(c) hearing.

*Jurado–Gutierrez,* 977 F.Supp. at 1093.

This court shares the view of *Vargas* and *Jurado–Gutierrez.* There is no rational basis for affording LPR aliens who leave the country after their conviction an opportunity to apply for discretionary relief, but denying that same opportunity to other LPR aliens (who are deportable for the same offenses) merely because they failed to travel abroad and remained in the country. Respondents suggest Congress was most concerned with expeditiously removing criminal aliens who are *inside* the United States. This justification is wholly incredible. If the Attorney General grants waivers to LPR aliens in exclusion proceedings, they are allowed *inside* the United States; Congress' purported concern with expeditiously removing criminal aliens who are *inside* the United States would necessarily be flaunted. Respondents suggest Congress took a legitimate "first step" at reforming the system of discretionary waivers for certain criminal offenses. It is undeniable that Congress may address a problem "one step at a time." However, each step that classifies groups of people and affords them different protection under the law must have a rational basis. Like the courts in *Vargas* and *Jurado–Gutierrez,* this court has searched to find a rational basis to support the distinction at issue. The search has been to no avail.

As interpreted and applied by the BIA in *Fuentes–Campos,* AEDPA § 440(d) violates Avelar–Cruz' equal protection rights. In light of Congress' probable intent, the preferred remedy would be to remove the benefit of a discretionary waiver hearing from both categories of aliens. But the benefit in this instance has already been irrevocably conferred. After the *Fuentes–Campos* decision on May 14, 1997, at least one similarly situated alien in an exclusion proceeding was given a discretionary waiver hearing, while Avelar–Cruz was not. To remedy this equal protection violation, Avelar–Cruz should be granted a hearing pursuant to the old (*i.e.* pre-AEDPA) § 212(c). The court expresses

no opinion on the merits of Avelar–Cruz' application for discretionary relief.

## *CONCLUSION*

Jose Martin Avelar–Cruz' petition for writ of habeas corpus is granted. Accordingly, petitioner is eligible for a waiver under Section 212(c) of the Immigration and Nationality Act. Petitioner's deportation is stayed pending consideration of his waiver application by an immigration judge.