Wilton K. ALMON, Petitioner,

v.

Janet RENO, et al., Respondents.

No. Civ.A. 98–11217–EFH.

United States District Court,
D. Massachusetts.

July 20, 1998.

Randy Olen, Providence, RI, for Wilton K. Almon, Petitioner.

Frank Crowley, Immigration & Naturalization, Special Assistant U.S. Attorney, Boston, MA, for Respondents.

### MEMORANDUM AND ORDER

HARRINGTON, District Judge.

■ This matter is before the Court on a Petition for Writ of Habeas Corpus filed on June 19, 1998. Milton K. Almon, the Petitioner, who is subject to an order of deportation, seeks a court ruling that he is entitled to a hearing determining whether or not he should receive a waiver from deportation because of humanitarian factors—commonly known as Section 212(c) of the Immigration and Nationality Act ("INA") relief. Petitioner sets forth two arguments for the application of discretionary relief under Section 212(c) to his case. First, petitioner asserts that Section 440(d) of the Anti–Terrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996) ("AEDPA"), cannot be applied to his case because it would constitute an improper retroactive elimination of Section 212(c) relief.[1]

---

1. In both his petition and at oral argument, petitioner argued that Section 440(d) cannot be applied retroactively to his case. The Court of Appeals for the First Circuit in *Goncalves v.*

Second, petitioner contends that Section 440(d), as applied to deportable aliens, violates the equal protection guarantee of the Due Process Clause of the Fifth Amendment. Petitioner's equal protection claim raises an issue of first impression in the First Circuit.

## I. *Background*

Petitioner is a native and citizen of Jamaica who entered the United States as an immigrant on March 29, 1980. Deportation proceedings were commenced by an administrative Order to Show Cause issued on October 24, 1996. That charging document was served upon petitioner on January 13, 1997 and filed with the Office of the Immigration Judge on February 14, 1997, initiating proceedings charging petitioner with deportability under Section 241(a)(2)(A)(iii) of the INA. The basis of the charges of deportability were three separate criminal convictions: a September 16, 1996 conviction for entering a dwelling with intent to commit larceny; (2) a January 9, 1995 conviction for possession of a stolen motor vehicle; and (3) a January 9, 1995 conviction for assault with a dangerous weapon.

Deportation proceedings commenced on April 17, 1997. At a hearing, on June 25, 1997, the Immigration Judge found petitioner to be deportable as charged and ineligible for Section 212(c) relief due to the enactment of Section 440(d) of AEDPA. Petitioner was ordered deported to Jamaica.

Petitioner appealed the deportation order administratively to the Board of Immigration Appeals ("BIA") by Notice of Appeal dated June 30, 1997. On May 1, 1998 the BIA dismissed the appeal noting that petitioner was ineligible for Section 212(c) relief by operation of Section 440(d). Petitioner filed the instant action on June 19, 1998. Petitioner is presently in the custody of the State of Rhode Island.[2]

## II. *Equal Protection Violation*

Petitioner contends that Section 440(d), as applied to deportable aliens, violates the equal protection guarantee of the Due Process Clause of the Fifth Amendment. Petitioner's claim relies on a distinction in the INA between two categories of aliens who are not permitted to reside in the United States, namely, deportable and excludable aliens. Presently, under the BIA's interpretation, Section 212(c), as amended by Section 440(d), applies to deportable aliens only.[3] This interpretation has resulted in the INS denying Section 212(c) discretionary relief to deportable aliens, but allowing it to legal permanent residents in exclusion proceedings. Petitioner argues that this distinction drawn by the BIA is not rationally related to a legitimate governmental interest and therefore violates his equal protection rights. To address petitioner's claim, it is necessary to set out some basic principles and briefly trace the development of the law in this area.

*Reno,* 144 F.3d 110, 112, 126 (1st Cir.1998) held that Section 440(d) did not apply retroactively to pending applications for Section 212(c) relief. In contrast, petitioner's deportation proceedings were not initiated until February 14, 1997, well after the enactment of the AEDPA. The Court does not look beyond the narrow holding in *Goncalves* to address petitioner's claim because it is more persuaded by his equal protection violation argument.

2. It is well settled that custody required for jurisdiction pursuant to 28 U.S.C. § 2241 does not necessarily mean physical custody. *See generally Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); *Peyton v. Rowe,* 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968). The term "in custody" has been broadly construed to apply to situations in which an alien is not suffering any actual physical detention, i.e., so long as

he is subject to a final order of deportation, an alien is deemed to be "in custody" for purposes of the INA, and therefore may petition a district court for habeas review of that deportation order. *See Nakaranurack v. United States,* 68 F.3d 290, 293 (9th Cir.1995); *see also Motta v. District Director, INS,* 869 F.Supp. 80, 85 (D.Mass.1994).

3. The AEDPA was signed on April 24, 1996. Section 440(d) of the AEDPA changed the last sentence of Section 212(c) of the INA to provide as follows:

This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in Section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by Section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by Section 241(a)(2)(A)(i).

Deportable aliens, defined in 8 U.S.C. § 1251(a), are those who reside within the United States but who may be deported for various reasons, including the commission of certain crimes. Excludable aliens, defined in 8 U.S.C. § 1182(a), are those who may be denied re-entry into the United States for various reasons. Section 212(c) of the INA provided that excludable aliens, who were legal permanent residents for seven years, and proceeded abroad temporarily, may be admitted at the discretion of the Attorney General.[4] By its language, Section 212(c) applied only to exclusion proceedings and not to deportation proceedings. The Court of Appeals for the Second Circuit in *Francis v. INS,* 532 F.2d 268, 269 (2d Cir.1976), held that in order to satisfy equal protection requirements, Section 212(c) relief must be available for aliens who were legal permanent residents for seven years, regardless of whether they were subject to deportation proceedings or exclusion proceedings. This rule has been universally accepted by the Courts of Appeals.

Discretionary relief under Section 212(c) for legal permanent residents who were convicted of certain crimes, including the crimes committed by petitioner, was expressly eliminated by Section 440(d) of the AEDPA on April 24, 1996. When Section 440(d) of the AEDPA amended Section 212(c), it added the language that "[t]his subsection shall not apply to an alien who is deportable by reason of having committed [enumerated criminal offenses]." This use of the word "deportable" in amending a section of the INA that addressed and defined excludable aliens forms the basis of petitioner's equal protection claim. At first, Immigration Judges applied Section 212(c), as amended, to bar both deportable and excludable aliens from seeking discretionary relief. *See generally In re*

*Fuentes–Campos,* BIA 3318, 1997 WL 269368 (1997).

The BIA in *In re Fuentes–Campos,* dated May 14, 1997, determined that Congress' use of the word "deportable" in Section 440(d) limits its application to aliens in deportation proceedings only, and is not applicable to aliens in exclusion proceedings. *In re Fuentes–Campos,* 1997 WL 269368. At issue in *Fuentes–Campos* was a legal permanent resident who had entered Mexico for a short time and was attempting to re-enter the United States. *Id.* The BIA ruled the alien eligible for a Section 212(c) relief waiver because he was involved in an exclusion proceeding. *Id.* It appears that the INS began its practice of granting discretionary waiver hearings in exclusion proceedings on May 14, 1997.

On September 30, 1996 Congress further altered the statutory landscape with the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.Law. 104–208, 110 Stat. 3009. Section 304(b) of IIRIRA specifically repealed Section 212(c) as amended by AEDPA Section 440(d). Section 304(a)(7) of IIRIRA consolidated deportation and exclusion proceedings into a single category of "removal" proceedings, eliminating the distinction petitioner challenges in this case. The IIRIRA amendments unambiguously bar Section 212(c) relief to criminal legal permanent residents in *both* exclusion and deportation proceedings. Thus, there is no current equal protection violation. However, the IIRIRA amendments did not take effect until April 1, 1997 and do not affect deportation proceedings pending before that date. *See* IIRIRA § 309(c)(1). Petitioner's deportation proceedings were pending as of April 1, 1997.

---

**4.** Prior to the enactment of Section 440(d) of the AEDPA, Section 212(c) of the INA read as follows:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) (other than paragraphs (3) and (9)(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211(b). The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

Therefore, IIRIRA does not cure any harm suffered by petitioner.

■ Several district courts have addressed this issue, but, as of yet, no Court of Appeals has ruled on it. The majority of the district court decisions followed the reasoning in *Francis* and held that the distinction between excludable and deportable aliens for discretionary relief under Section 212(c) violates the right to equal protection under the laws. *See Cruz v. Reno*, 6 F.Supp.2d 744, 746, 755–56 (N.D.Il.1998); *Jurado–Gutierrez v. Greene*, 977 F.Supp. 1089, 1093–94 (D.Co. 1997); *Vargas v. Reno*, 966 F.Supp. 1537, 1547–49 (S.D.Ca.1997). *But see Gutierrez–Martinez v. Reno*, 989 F.Supp. 1205, 1210–11 (N.D.Ga.1998). Under the equal protection clause of the Fourteenth Amendment, made applicable to the federal government through the due process clause of the Fifth Amendment, distinctions in the law between classes of individuals must have a rational basis. *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 488–89, 75 S.Ct. 461, 99 L.Ed. 563 (1955). This means that the classification drawn "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." *Stanton v. Stanton*, 421 U.S. 7, 14, 95 S.Ct. 1373, 43 L.Ed.2d 688 (1975), quoting *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

Petitioner argues that the BIA's decision in *Campos–Fuentes* draws an arbitrary distinction between deportable and excludable aliens. In particular, petitioner argues that if he had left the United States to visit another country, under *Fuentes–Campos* he would have been entitled to a Section 212(c) discretionary hearing. Simply because he did not leave the country, he was placed in a deportation proceeding and denied a Section 212(c) hearing. Similar to this reasoning, the Court of Appeals for the Second Circuit in *Francis* stated that

[t]he government has failed to suggest any reason why this petitioner's failure to trav-

el abroad following his conviction should be a crucial factor in determining whether he may be permitted to remain in this country. Reason and fairness would suggest that an alien whose ties with this country are so strong that he has never departed after his initial entry should receive at least as much consideration as an individual who may leave and return from time to time.

*Francis,* 532 F.2d at 273.

The Court rules that there is no rational basis for affording legal permanent residents who leave the country after their conviction an opportunity to apply for discretionary relief, while denying that same opportunity to other legal permanent residents (who are deportable for the same offenses) merely because they failed to travel abroad but remained in the country. *See Cruz,* 6 F.Supp.2d at 756.

The burden is on petitioner to show that his equal protection rights were violated. For petitioner's equal protection claim to succeed, another application for Section 212(c) relief must have been granted, whereas petitioner's was denied. It is the application of the statute as evidenced by the BIA's decision in *Fuentes–Campos* which violates equal protection. The BIA applied the Section 440(d) amendment to Section 212(c) to resident aliens in the United States, while not applying the amendment to resident aliens who have recently spent a short time abroad and were seeking re-entry. Therefore, after the *Fuentes–Campos* decision on May 14, 1997, at least one resident alien in an exclusion proceeding was given a discretionary waiver hearing, whereas petitioner in a deportation hearing was not. Petitioner falls within this narrow category because he was ruled ineligible for Section 212(c) relief on June 25, 1997. By granting Mr. Fuentes–Campos' application for a Section 212(c) discretionary hearing on May 14, 1997, the BIA violated the equal protection rights of petitioner when it ruled him ineligible for Section 212(c) relief. *See Cruz,* 6 F.Supp.2d at 756; *Jurado–Gutierrez,* 977 F.Supp. at 1093–94.

Having found an equal protection guarantee violation, the Court must now address the remedy. The district court opinions have differed on the appropriate remedy. Compare *Jurado–Gutierrez*, 977 F.Supp. at 1094–95 (discretionary hearing allowed pursuant to pre-AEDPA Section 212(c)), *with Vargas*, 966 F.Supp. at 1548 (grant of discretionary hearing denied because there is no ongoing constitutional violation). It is clear that the repeal of Section 212(c) relief by the IIRIRA corrects any constitutional problems for cases filed after April 1, 1997. However, petitioner was denied equal protection when the BIA dismissed his appeal from an order of deportation without deciding the merits of his waiver and yet allowed excludable aliens such waivers. The federal district courts have broad, equitable powers to remedy violations of constitutional rights. *See Swann v. Charlotte–Mecklenburg Board of Education*, 402 U.S. 1, 31, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). The Court is persuaded by the decisions in *Jurado–Gutierrez* and *Cruz* that the appropriate remedy is a discretionary hearing pursuant to the old Section 212(c). *See Cruz*, 6 F.Supp.2d at 756; *Jurado–Gutierrez*, 977 F.Supp. at 1093–94.

## CONCLUSION

For the foregoing reasons, the petition for habeas corpus is granted to this extent: the case is remanded to the Board of Immigration Appeals for a discretionary determination of the merits of petitioner's application for relief under the old INA Section 212(c) without regard to Section 440(d) of AEDPA. Petitioner's deportation is stayed pending consideration of his waiver application by an Immigration Judge. The Attorney General, through the Board of Immigration Appeals, of course, may still exercise her discretion whether to allow petitioner to avoid deportation.

SO ORDERED.