Gibbon W. **FARQUHARSON**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. Civ.A. 98–4000(MTB).

United States District Court, D. New Jersey.

Jan. 6, 1999.

**404**

Gibbon W. Farquharson, Newton, NJ, pro se.

Daniel J. Gibbons, Assistant U.S. Attorney, United States Attorney's Office, Newark, NJ, for Respondent.

### *OPINION*

BARRY, District Judge.

Petitioner, Gibbon W. Farquharson, is presently detained at the Sussex County Correctional Center in Newton, New Jersey awaiting deportation. On August 25, 1998, he filed a petition with this court seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. The Immigration and Naturalization Service ("INS" or "respondent") opposed the petition asserting, among other things, that this court does not have jurisdiction because of the recently enacted Anti–Terrorism and Effective Death Penalty Act of 1996 ("AED-PA"), Pub.L. 104–132, 110 Stat. 1214, and

---

1. Aliens who are either deportable or excludable because they have been convicted of certain criminal offenses enumerated in the INA have been referred to in the statute and throughout the case law as "criminal aliens." *See, e.g.,* 8

Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. 104–208, 110 Stat. 30009–546, (collectively as "1996 amendments"). For the reasons which follow, the petition will be granted and the case will be remanded for action consistent with this opinion.

### *I. Factual Background*

Originally from Jamaica, petitioner has resided in the United States as a legal permanent resident for twenty-seven years. Petitioner has four children each of whom was born in the United States. In 1990, petitioner pled guilty in the Superior Court of New Jersey, Passaic County, to possession of a controlled substance with intent to distribute within 1000 feet of school property, and to resisting arrest. He was sentenced on April 19, 1990 to a term of incarceration of five years with a minimum period of eighteen months before being eligible for parole.

On July 12, 1994, the INS issued an order to show cause why petitioner should not be deported under what were then § 241(a)(2)(B)(i), 8 U.S.C. § 1251(a)(2)(B)(i), and § 241(a)(2)(A)(iii), 8 U.S.C. § 1251(a)(2)(A)(iii), of the Immigration and Naturalization Act ("INA"). INA § 241(a)(2)(B)(i) provided in pertinent part that:

[a]ny alien who at any time after entry has been convicted of a violation of . . . any law or regulation . . . relating to a controlled substance . . . is deportable.

INA § 241(a)(2)(A)(iii) provided that "[a]ny alien who is convicted of an aggravated felony at any time after entry is deportable." [1] Petitioner contested deportability but the Immigration Judge found petitioner deportable under both sections.

In July 1995, petitioner filed a request for a waiver of deportability under § 212(c) of the INA. *See* 8 U.S.C. § 1182(c) (1994). At that time, INA § 212(c) vested the Attorney General with discretion to waive the deportation of an otherwise deportable resident alien.[2] *See Katsis v. INS,* 997 F.2d 1067,

---

U.S.C. § 1252(a)(2)(c) (1996) (entitled "Orders against criminal aliens"). This court will similarly use the phrase "criminal aliens."

2. INA § 212(c), 8 U.S.C. § 1182(c), provided in relevant part:

1070 (3d Cir.1993) (holding that, despite its plain language, INA § 212(c) applies to deportable aliens as well as excludable aliens), *cert. denied,* 510 U.S. 1081, 114 S.Ct. 902, 127 L.Ed.2d 93 (1994). When presented with an application for a waiver pursuant to INA § 212(c), an immigration judge was "required to balance the positive and adverse factors in determining whether a waiver was warranted, and to justify his or her decision, whether in favor or against granting a waiver...." *Goncalves v. Reno,* 144 F.3d 110, 114 (1st Cir.1998), *petition for cert. filed,* 67 U.S.L.W. 3364 (U.S. Nov. 18, 1998) (No. 98–835). The factors to be considered included length of prior residence in the United States, family and personal ties to the United States, positive employment history, community service involvement, evidence of good character, and proof of genuine rehabilitation for those who committed crimes. *See, e.g., Katsis,* 997 F.2d at 1074 (listing factors); *Henderson v. Immigration and Naturalization Service,* 157 F.3d 106, 109 (2d Cir.1998) (same), *petition for cert. filed* Dec. 17, 1998 (No. 98–996); *Wallace v. Reno,* 24 F.Supp.2d 104, 106 (D.Mass.1998) (same); *Matter of Marin,* 16 I. & N. Dec. 581, 584–85 (BIA 1978) (same).

According to the Immigration Judge, petitioner's request for a waiver was not acted upon because at some point he was moved out of the custody of the New Jersey Department of Corrections and placed in a county jail whereupon his case was administratively closed. When petitioner reentered the state prison system, the case was recalendered and resumed.

On April 24, 1996, with petitioner's § 212(c) waiver application pending, the AEDPA was signed into law. The AEDPA effected significant changes to the INA. As relevant here, section 440(d) of the AEDPA rendered aliens who were deportable by reason of having committed offenses relating to controlled substances ineligible for discretionary waivers.[3] *See* AEDPA § 440(d) (amending INA § 212(c), 8 U.S.C. § 1182(c) (1996)).[4]

In June of 1996, the BIA held that AEDPA § 440(b) could not be applied retroactively to aliens who had requested waivers before the AEDPA was enacted. *See In re Soriano,* Int. Dec. No. 3289, 1996 WL 426888 (BIA June 27, 1996). Shortly thereafter, however, the Attorney General overruled the BIA and determined that AEDPA § 440(d) was to be applied retroactively to all pending cases regardless of the date of the waiver application. *See Matter of Soriano,* Int. Dec. No. 3289 (Op.Att'y Gen. Feb. 21, 1997) (beginning at 38).

Constrained by AEDPA § 440(d) and *Matter of Soriano,* the Immigration Judge found petitioner ineligible for a § 212(c) waiver and, on September 12, 1997, denied his application. On March 30, 1998, the BIA dismissed petitioner's appeal, noting that it was bound by the opinion of the Attorney General absent a contrary decision by the Court of

---

[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions [enumerating classes of aliens who may be denied admission to the United States] ...

3. The full text of INA § 212(c), as amended by § 440(d), provides that:

[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than

paragraphs (3) and 9(C)). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under § 1181(b) of this title. This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in section 1251(a)(2)(A)(iii),(B),(C), or (D) of this title, or any offense covered by section 1251(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 1251(a)(2)(A)(i) of this title.

4. The fact that the IIRIRA, enacted shortly thereafter on September 30, 1996, repealed 8 U.S.C. § 1182(c) is not relevant here because that IIRIRA section applies only to aliens whose deportation proceedings were commenced after April 1, 1997. *See* IIRIRA § 309(c).

Appeals of the Third Circuit.[5] This petition followed.

## II. Discussion

Petitioner argues that (1) AEDPA § 440(d) should not have been applied retroactively to deny him a hearing on the merits of his § 212(c) waiver application, and (2) the INS should not be able to use his plea of guilty as the basis for deporting him because he was unaware that he could be deported if he pled guilty to a drug-related crime. The INS responds, first, that this court does not have jurisdiction to consider petitioner's habeas petition given the 1996 amendments to the INA. It contends, as well, that the Immigration Judge did not err in applying AEDPA § 440(d) to petitioner and that petitioner cannot attempt to avoid deportation by collaterally attacking his guilty plea.

Whether this court has jurisdiction is, of course, the first issue to be decided. If this court finds that jurisdiction exists, it must then *determine* whether petitioner's claims fall within the scope of review permissible under § 2241. These apparently clear-cut issues are neither clear-cut nor simple. This court, however, concludes that one of petitioner's claims—whether AEDPA § 440(d) should have been applied to prohibit consideration of petitioner's application for a waiver even though that application was filed before the AEDPA was enacted—is properly before it, and will be addressed.

### A. Jurisdiction under 28 U.S.C. § 2241

The INS argues that this court does not have jurisdiction because the AEDPA and the IIRIRA amended the INA such that habeas jurisdiction was abolished leaving only review in the courts of appeals pursuant to 8 U.S.C. § 1252 (1996). Before addressing the jurisdictional argument, however, and to place that argument in some context, it is appropriate to review the applicable statutory framework for review of orders of removal together with the changes made to the INA by the AEDPA and the IIRIRA. Parenthet-

ically, this review has convinced this court, and should convince the reader, of the accuracy of one judge's bemoaning of the wording of the INA as "an excellent example of Congress's penchant for hastening the aging process of judges."

### 1. Statutory Framework for Judicial Review

Under § 106(a) of the INA, as amended in 1961, "the sole and exclusive procedure for ... the judicial review of all final orders of deportation" was by filing a petition for review with the appropriate court of appeals. INA § 106(a), 8 U.S.C. § 1105a(a) (1994); *see also Massieu v. Reno*, 91 F.3d 416, 421 (3d Cir.1996). The INA also contained a habeas provision which provided that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." INA § 106(a)(10), 8 U.S.C. § 1105a(a)(10) (1994).

Everything changed when, on April 24, 1996, the AEDPA was signed into law. For starters, AEDPA § 401(e) expressly repealed the habeas provision of the INA and replaced it with AEDPA § 440(a), which provides in pertinent part:

> any final order of deportation against an alien who is deportable by reason of having committed [certain enumerated criminal offenses including offenses related to controlled substances], ... shall not be subject to review by any court.

8 U.S.C. § 1105a(a)(10) (1996). Although no effective date was set forth, the Court of Appeals for the Third Circuit, along with numerous other circuits, has held that AEDPA § 440(a) became effective on the date on which the AEDPA was enacted. *See Salazar–Haro v. INS*, 95 F.3d 309, 311 (3d Cir. 1996) (noting similar decisions by the Second, Fifth and Ninth Circuits), *cert. denied*, —— U.S. ——, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997). In addition, the Third Circuit has held that AEDPA § 440(a) applied to all petitions for review pending on the date of

---

5. In addition, the BIA rejected petitioner's argument that AEDPA § 440(d) violated the Constitution because it applied on its face only to deportation proceedings and not to exclusion proceedings. Citing to *Matter of C*, 20 I. & N.

Dec. 529 (BIA 1992) and *Matter of Lazarte*, Int. Dec. No. 3264 (BIA 1996), the BIA observed that even if it were to perceive a constitutional infirmity in an unambiguous statute, it lacked jurisdiction to remedy that infirmity.

enactment. *Id.; Morel v. INS*, 144 F.3d 248, 250–51 (3d Cir.1998).

On September 30, 1996, only five months after the AEDPA was signed into law, Congress further amended the INA by enacting the IIRIRA. The IIRIRA provided that its amendments to the INA would become effective "the first day of the first month beginning more than 180 days after the date of enactment," or April 1, 1997. *See* IIRIRA § 309(a). The IIRIRA contained two sets of provisions: the transitional provisions and the permanent provisions.

The transitional provisions, which are not codified in the United States Code, provide that the permanent IIRIRA provisions do not generally apply to aliens who are involved in exclusion or deportation proceedings commenced prior to April 1, 1997. *See* IIRIRA § 309(c)(1).[6] The transitional provisions also contain a section similar to AEDPA § 440(a). Transitional IIRIRA § 309(c)(1) provides that in cases in which the final order of deportation or exclusion was entered more than thirty days after the effective date of the IIRIRA, or after October 30, 1996,

> there shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed [certain enumerated criminal offense including offenses related to controlled substances] . . . .

IIRIRA § 309(c)(4)(G).

The permanent provisions of the IIRIRA repealed, in its entirety, the former section of the INA that governed judicial review, 8 U.S.C. § 1105a, and the judicial review provisions were relocated to 8 U.S.C. § 1252. Under the IIRIRA permanent provisions, venue still primarily resides in the courts of appeals for review of orders of removal. *See* 8 U.S.C. § 1252(b)(2) (1996). However, following the lead of AEDPA § 440(a) and transitional IIRIRA § 309(c)(4)(G), section 306(a)(2)(C) of the permanent IIRIRA provisions provides that

> [n]otwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [certain enumerated offenses including offenses related to controlled substances] . . . .

IIRIRA § 306(a)(2)(C), codified as 8 U.S.C. § 1252(a)(2)(C) (1996).

The statutory scheme governing judicial review is further complicated by permanent provision § 306(a) of the IIRIRA which added section 242(g) to the INA (codified as 8 U.S.C. § 1252(g) (1996)). Section 242(g) of the INA is an expansive provision stating that:

> [e]xcept as · provided in this section [8 U.S.C. § 1252] and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

INA § 242(g), 8 U.S.C. § 1252(g). Although, as noted above, the permanent IIRIRA provisions do not generally apply to aliens whose deportation proceedings were initiated prior to April 1, 1997, INA § 242(g) is unique and "shall apply without limitation to claims arising from all past, pending or future exclusion, deportation, or removal proceedings . . . ." *See* IIRIRA § 306(c)(1).

■ As an initial matter, it must be determined whether § 242(g) applies to petitioner, thereby restricting him to judicial review—or lack thereof—under 8 U.S.C. § 1252, or whether petitioner comes within the IIRIRA transitional provisions governing judicial re-

---

**6.** IIRIRA § 309(c)(1) provides that:
(c) TRANSITION FOR ALIENS IN PROCEEDINGS—
(1) GENERAL RULE THAT NEW RULES DO NOT APPLY—Subject to the succeeding provisions of this subsection, in the case of an alien who is in exclusion or deportation proceedings before [April 1, 1997]—

(A) the amendments made by this subtitle shall not apply, and (B) the proceedings (including judicial review thereof) shall continue to be conducted without regard to such amendments.

view.[7] Petitioner's deportation proceeding was commenced on July 12, 1994 and, thus, under IIRIRA § 309(c), the transitional provisions should apply to him "without regard to [the IIRIRA permanent] amendments." *See* IIRIRA § 309(c)(1)(B). On the other hand, however, petitioner filed his petition with this court on August 25, 1998, well after INA § 242(g) became effective [8] and presumably applied retroactively to his petition. *See* IIRIRA § 306(c)(1) (stating that INA § 242(g) "shall apply without limitation to claims arising from all past, pending or future exclusion, deportation, or removal proceedings").

Some courts have concluded that INA § 242(g) is not applicable to criminal aliens such as petitioner whose deportation proceedings were pending before the effective date of the statute for if it were it would render meaningless the transitional provisions of the IIRIRA governing judicial review, such as IIRIRA §§ 309(a)(2)(C) and 306(c)(4)(G). Noting, explicitly or implicitly, the maxims that whenever possible all statutory provisions should be given effect and that the specific takes precedence over the general, those courts have given full effect to those transitional provisions. *See, e.g., Perez v. Reno,* 18 F.Supp.2d 674, 680 (W.D.Tex. 1998); *Sabino v. Reno,* 8 F.Supp.2d 622, 633–34 (S.D.Tex.1998); *Avelar Cruz v. Reno,* 6 F.Supp.2d 744, 749–50 (N.D.Ill.1998).

Other courts have simply applied INA § 242(g) to aliens in petitioner's circumstances. *See, e.g., Goncalves,* 144 F.3d at 118; *Jean–Baptiste v. Reno,* 144 F.3d 212, 218 (2d Cir.1998); *Magana–Pizano v. INS,* 152 F.3d 1213, 1221–22 (9th Cir.1998) (applying § 242(g) because bound by *Hose v. INS,* 141 F.3d 932 (9th Cir.1998), *withdrawn and reh'g en banc granted,* 161 F.3d 1225, 1998 WL 848048 (9th Cir. Dec.2, 1998)), *opinion amended by* 159 F.3d 1217 (9th Cir.1998),

*petition for cert. filed,* 67 U.S.L.W. 3364 (U.S. Nov. 18, 1998) (No. 98–836); *Pak v. Reno,* 8 F.Supp.2d 1001, 1003 (N.D.Ohio 1998). The Court of Appeals for the Third Circuit has not addressed this issue.

This court will not attempt to untangle what has been termed a "statutory Gordian knot," *see Marriott v. Ingham,* 990 F.Supp. 209, 212 (W.D.N.Y.1998), but for the following reason will instead assume that § 242(g) applies to petitioner. Transitional provision IIRIRA § 309(c)(4)(G) provides, in relevant part, that "there shall be no appeal in the case of an alien who is inadmissible or deportable by reason of having committed [an enumerated criminal offense]...." This section was replaced by permanent IIRIRA provision § 306(a)(2)(C), made applicable by § 242(g), which provides that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [an enumerated criminal offense]...." 8 U.S.C. § 1252(a)(2)(C), IIRIRA § 306(a)(2)(C). Both provisions, therefore, albeit in somewhat different language, bar petitioner, as an alien deportable for having committed one or more specified criminal offenses, from obtaining judicial review of his final order of deportation.

Section 1252(a)(2)(C), however, contains seemingly more restrictive language—"no court shall have jurisdiction."—when compared to the transitional provision which provides that "no appeal" may be taken. Therefore, if habeas jurisdiction still exists under INA § 242(g), jurisdiction most certainly exists under the arguably less stringent transitional provision. *See Avelar Cruz,* 6 F.Supp.2d at 751 (noting that the use of the narrow term "appeal" shows that transitional provision IIRIRA § 309(c)(4)(G) does not foreclose § 2241 review).

---

**7.** Respondent simply ignores this issue and presumes that § 242(g) applies to petitioner.

**8.** Courts have disagreed as to whether INA § 242(g) became effective on the general effective date of the IIRIRA, April 1, 1997, or if it was meant to take effect on the date of the IIRIRA's enactment, September 30, 1996. *Compare Lalani v. Perryman,* 105 F.3d 334, 336 (7th Cir.1997) (INA § 242(g) does not take effect until April 1,

1997); *with Charan v. Schiltgen,* 1997 WL 135938 (N.D.Cal. Mar.18, 1997) (INA § 242(g) takes effect on September 30, 1996). This court need not address this issue because, under either view, INA § 242(g) was in effect when petitioner filed his habeas petition on August 25, 1998. *See Marriott v. Ingham,* 990 F.Supp. 209, 211–12 (W.D.N.Y.1998).

*2. Jurisdiction under 28 U.S.C. § 2241*

 Informed by the statutory framework detailed above, this court will return to where it began and reach the question of whether it has jurisdiction to consider petitioner's habeas petition. The INS, as noted earlier, argues that habeas review has been eliminated by the 1996 amendments which substantially changed judicial review under the INA. The INS points, first, to AEDPA § 401(e) which expressly repealed the section of the INA that formerly authorized habeas review, namely 8 U.S.C. § 1105a(a)(10). Moreover, it argues that INA § 242(g) states in no uncertain terms that "notwithstanding any other provision of law[,]" "no court shall have jurisdiction" to review any immigration decision "[e]xcept as provided in this section [8 U.S.C. § 1252]." 8 U.S.C. § 1252(g). Because 8 U.S.C. § 1252(a)(2)(C) explicitly provides that "[n]otwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed [a criminal offense dealing with controlled substances,]" the INS asserts that this court lacks jurisdiction over this petition. *Id.* at 406–407. The INS, this court concludes, is wrong.

Despite the seemingly stringent language of the IIRIRA and the AEDPA with respect to judicial review, not all review over final removal orders against criminal aliens has been extinguished by the 1996 amendments. Certainly, there is little dispute that in 1996 Congress withdrew jurisdiction from the courts of appeals to review such orders. Certainly, too, however, most courts which have considered the issue of whether any avenue of review remains have found that it does. Parenthetically, while not directly addressing the issue, the Court of Appeals for the Third Circuit dismissed the petition for review in *Salazar v. Haro* because jurisdiction had been withdrawn by AEDPA § 440(a), but stated that "[t]o the extent ... that constitutional rights applicable to aliens may be at stake, judicial review may not be withdrawn by statute." *See Salazar–Haro,* 95 F.3d at 311. The court then cited to *Felker* and *Hincapie–Nieto,* thereby suggesting the availability of habeas corpus review even after the 1996 amendments. *Id.* at 311 (citing to *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) and *Hincapie–Nieto v. INS,* 92 F.3d 27, 29–31 (2d Cir.1996)). Similarly, in *Morel,* the Third Circuit dismissed the petition for review because of AEDPA § 440(a) but commented that petitioner had not asserted an unconstitutional deprivation of his rights, noting the INS's concession that " § 440(a) does not preclude Article III court review of claims of 'substantial Constitutional error.' " *Morel,* 144 F.3d at 251.

Following the lead of numerous courts, including the First, Second, and Ninth Circuits, this court holds that it has jurisdiction over this petition brought pursuant to 28 U.S.C. § 2241.[9] *See, e.g., Henderson,* 157 F.3d at 130 ("aliens convicted of specified criminal offenses—who are precluded by the AEDPA and the IIRIRA from seeking direct review of their deportation, exclusion, or removal orders in the courts of appeals—may file habeas petitions in the district courts pursuant to 28 U.S.C. § 2241[ ]"); *Jean–Baptiste,* 144 F.3d at 219 ("in the absence of language affirmatively and clearly eliminating habeas review, we presume Congress did not aim to bar federal courts' habeas jurisdiction pursuant to § 2241[ ]"); *Goncalves,* 144 F.3d at 126 (holding that after the enactment of the AEDPA and the IIRIRA, the proper forum for a criminal alien to challenge his or her final deportation order is in the district court through a petition for habeas corpus pursuant to § 2241); *Magana–Pizano,* 152

9. The Ninth Circuit's position regarding habeas review after the 1996 amendments is somewhat unclear. Up until December 2, 1998, the Ninth Circuit had adopted a two track approach to whether INA § 242(g) repealed § 2241 habeas jurisdiction. In *Hose,* the Ninth Circuit interpreted § 242(g) as repealing § 2241 jurisdiction. *See Hose,* 141 F.3d at 936. However, the Ninth Circuit later concluded in *Magana–Pizano* that because the INA eliminated judicial review for final orders of removal against criminal aliens, *see* INA § 242(a)(2)(C), INA § 242(g) could not constitutionally repeal § 2241 habeas jurisdiction in those cases. *See Magana–Pizano,* 152 F.3d at 1220. On December 2, 1998, the Ninth Circuit withdrew its published opinion in *Hose* and granted a rehearing *en banc. See Hose v. INS,* 161 F.3d 1225, 1998 WL 848048 (9th Cir. Dec.2, 1998).

F.3d at 1222 (same); *Billett v. Reno*, 2 F.Supp.2d 368, 372 (W.D.N.Y.1998) (finding jurisdiction under § 2241 after 1996 amendments); *Pak*, 8 F.Supp.2d at 1007 (same); *Sandoval v. Reno*, 1997 WL 839465 at *6 (E.D.Pa. Dec.30, 1997) (same); *Jurado–Gutierrez v. Greene*, 977 F.Supp. 1089, 1091 (D.Colo.1997) (same); *Gutierrez–Martinez v. Reno*, 989 F.Supp. 1205, 1208–09 (N.D.Ga. 1998) (collecting cases and stating that "[t]his court agrees with the majority in concluding that § 2241 preserves the writ of habeas corpus for aliens subject to deportation, such as the Petitioner [a criminal alien]"); *Wallace v. Reno*, 24 F.Supp.2d 104 (D.Mass.1998) (entertaining § 2241 petition for criminal alien without jurisdictional discussion); *see also Lee v. Reno*, 15 F.Supp.2d 26, 39–40 (D.D.C.1998) (finding that district court has jurisdiction pursuant to § 2241 or, alternatively, under "constitutionally-required habeas"); *but see Richardson v. Reno*, 162 F.3d 1338 (11th Cir.1998) (finding that INA § 242(g) divests district court of jurisdiction over § 2241 petitions).

The availability of habeas corpus under 28 U.S.C. § 2241 to challenge removal orders has long been recognized. *See Jean–Baptiste*, 144 F.3d at 218; *Goncalves*, 144 F.3d at 120. Prior to 1961, habeas corpus was the primary remedy in immigration cases. *See Magana–Pizano*, 152 F.3d at 1220. Indeed, "the primary historical use of the writ of habeas corpus was precisely against executive detentions." *See Henderson*, 157 F.3d at 121 (also citing to *Brown v. Allen*, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), which stated that "the historic purpose of the writ has been to relieve detention by executive authorities without judicial trial"). Even after the INA habeas provision, i.e. INA § 106(a)(10), was enacted, traditional habeas review existed and the "two provisions ... work[ed] hand-in-hand." *Lee*, 15 F.Supp.2d at 34; *see also Magana–Pizano*, 152 F.3d at 1217 n. 6; Trevor Morrison, Note, *Removed from the Constitution? Deportable Aliens' Access to Habeas Corpus Under the New Immigration Legislation*, 35 Colum.J.Transnat'l L. 697, 698–99 n. 10 (1997).

This court will not read INA § 242(g), which states that 8 U.S.C. § 1252 shall govern judicial review "notwithstanding any other provision of law[,]," 8 U.S.C. § 1252(g), and 8 U.S.C. § 1252(a)(2)(C), which provides that no court shall have jurisdiction over a final removal order against a criminal alien "notwithstanding any other provision of law[,]" as repealing habeas relief under § 2241. However broad this language appears to be, it is clear that if Congress wished to repeal traditional habeas jurisdiction under § 2241, it must have done so expressly. *See Lee*, 15 F.Supp.2d at 39 ("notwithstanding" language of INA § 242(g) does not expressly repeal § 2241 jurisdiction as required by Supreme Court).

The Supreme Court was recently confronted with the issue of whether the AEDPA amendments to 28 U.S.C. § 2244(b), which eliminated the Court's authority to consider appeals of successive habeas petitions found to be without merit by a circuit court, were also meant to eliminate the Court's original habeas jurisdiction pursuant to 28 U.S.C. §§ 2241 and 2254. *See Felker v. Turpin*, 518 U.S. 651, 656–58, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). The Court concluded, as it had in *Ex parte Yerger*, 75 U.S. (8 Wall.) 85, 19 L.Ed. 332 (1868), that Congress must make explicit reference to the statute granting jurisdiction if it wished to repeal habeas jurisdiction. *Id.* at 658–61, 116 S.Ct. 2333. Because Congress did not expressly state that it was either eliminating or restricting the Court's jurisdiction under §§ 2241 and 2254, the Court would not find a repeal by implication and the traditional habeas avenues for review remained intact. *Id.*

Likewise, here, the 1996 amendments do not expressly state that they repealed habeas jurisdiction under 28 U.S.C. § 2241. Moreover, it is important to note, the IIRIRA was enacted after *Felker*, with Congress presumably well aware that if it wished to restrict or repeal the traditional habeas remedy, it must use specific language to do so. *See Goncalves*, 144 F.3d at 122; *Lee*, 15 F.Supp.2d at 39.

The INS argues that *Felker* and *Ex parte Yerger* do not apply in the immigration context because Congress has constructed a statutory review scheme that deals comprehensively with the subject matter at issue.

In such cases, it continues, the "repeal by implication" argument is inappropriate because Congress has demonstrated a "fairly discernable" intent under that scheme requiring deportable aliens to bring any and all claims to the courts of appeals. This court does not agree.

First, the INA, as amended, does not indicate that any and all claims of deportable aliens must now be before the courts of appeals on petitions for review. Indeed, the amended INA specifically provides that, in some instances, matters may be brought before the district courts. For example, judicial review of determinations made under 8 U.S.C. § 1225(b)(1) is available in habeas proceedings albeit only as to limited issues, such as whether a petitioner is an alien. *See* 8 U.S.C. § 1252(e)(2). Another section of the amended INA designates the United States District Court for the District of Columbia as the exclusive forum for a limited category of cases. *See* 8 U.S.C. § 1252(e)(3)(A).

Second, the cases which the INS cites in support of its contention that a repeal by implication argument is inappropriate are inapposite because the schemes of statutory review addressed in those cases did not impinge on traditional habeas concerns and, thus, the cases do not address repeals of habeas jurisdiction. The INS cites, for example, to *Argentine Republic v. Amerada Hess Shipping*, 488 U.S. 428, 438, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989), in which Congress's decision to comprehensively deal with the area of foreign sovereign immunity was found to preclude review under the Alien Tort Statute even without clear language of repeal. It points, as well, to *United States v. Fausto*, 484 U.S. 439, 453–55, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), in which the Civil Service Reform Act repealed the "Back Pay Act's implication" permitting review. In the context of immigration, however, the Supreme Court concluded that although the Immigration Act of 1917 precluded judicial intervention "except insofar as it was required by the Constitution," habeas jurisdiction remained. *See Heikkila v. Barber*, 345 U.S. 229, 235, 73 S.Ct. 603, 97 L.Ed. 972 (1953). Here, "as was the case in *Yerger* and *Felker*, there is no indication that Congress

intended to take the dramatic—and arguably unconstitutional—step of repealing the habeas statute with roots traceable to our nation's beginnings." *Mojica v. Reno*, 970 F.Supp. 130, 160 (E.D.N.Y.1997).

The INS also points to AEDPA § 401(e), which explicitly repealed the INA habeas provision, § 106(a)(10), in support of its contention that in 1996 Congress clearly intended to, and did in fact, repeal all habeas review. Again, this court disagrees. AEDPA § 401(e) repeals, by its very language, INA § 106(a)(10) and that section only. Congress was undoubtedly aware that, after 1961, habeas review was available under either 28 U.S.C. § 2241 or INA § 106(a)(10). *See Magana–Pizano*, 152 F.3d at 1217 n. 6 ("[e]nactment of the INA § 106(a)(10) habeas remedy did not supplant the district court's general habeas corpus jurisdiction under 28 U.S.C. § 2241[ ]") (citing to *Mondragon v. Ilchert*, 653 F.2d 1254, 1255 (9th Cir.1980)); *Lee*, 15 F.Supp.2d at 34 ("[n]o case . . . holds that the 1961 Act repealed § 2241 jurisdiction"); *Billett*, 2 F.Supp.2d at 370 (noting availability of habeas under either INA or § 2241 from at least 1961 to 1996). Congress, clearly capable of designating precisely which provisions it intends to affect by its amendments, elected only to repeal the INS habeas provision. AEDPA § 401(e) made no mention of the traditional § 2241 review that had been "peacefully coexist[ing]" with INA § 106(a)(10) since 1961. *See Lee*, 15 F.Supp.2d at 34 (stating that the two habeas avenues "can, did, and were intended to peacefully coexist[ ]"). As the First Circuit observed, "[h]ad Congress wished to eliminate any possible habeas jurisdiction under 28 U.S.C. § 2241, it could easily have inserted an explicit reference, but it did not." *Goncalves*, 144 F.3d at 121.

Finally, and perhaps most importantly, this court will not read the 1996 amendments as repealing § 2241 review for criminal aliens because to do so could—and probably would—raise serious constitutional concerns, among them the Suspension Clause of the Constitution. *See Magana–Pizano*, 152 F.3d at 1221–22 (finding that § 2241 must exist for criminal aliens in order to avoid running afoul of the Suspension Clause); *Goncalves*,

144 F.3d at 122 (same); *but see Richardson v. Reno*, 162 F.3d 1338, 1374–75 (11th Cir. 1998). The INS argues that the Suspension Clause is not implicated by what it asserts was the complete repeal of habeas jurisdiction by the 1996 amendments because review still exists in the courts of appeals. In other words, it contends, there has been no "suspension" of the writ, only a limitation. This argument inexplicably fails to take into account the crucial fact that criminal aliens are expressly precluded by the 1996 amendments from seeking review in the courts of appeals under the amended INA. *See* 8 U.S.C. § 1252(a)(2)(C). "Congress cannot eliminate habeas corpus review over final deportation orders unless there is some alternative avenue for review." *Yesil v. Reno*, 958 F.Supp. 828, 838 (S.D.N.Y.1997) (citing to *Heikkila*, 345 U.S. at 234, 73 S.Ct. 603). Therefore, because by virtue of 8 U.S.C. § 1252(a)(2)(C) judicial review in the courts of appeals is foreclosed for criminal aliens such as petitioner, the habeas door must remain open.[10]

Because this case involves the petition of a criminal alien, this court need not reach the question of what habeas relief, if any, remains for a non-criminal alien. The court recognizes that it will be awkward, to say the least, if courts were to find that constitutional concerns require that criminal aliens be allowed to seek habeas relief pursuant to § 2241 but that non-criminal aliens who, of course, may still file petitions for review with the courts of appeals, are foreclosed from seeking such relief.[11] Criminal aliens must, however, have a forum in which to raise constitutional concerns and that forum is the district court on habeas review.[12]

### B. Scope of Review under 28 U.S.C. § 2241

■ Having established that this court has jurisdiction over the petition under 28 U.S.C. § 2241, the next issue is whether one or both

10. A few courts have held that the IIRIRA abolished jurisdiction under § 2241, leaving available only a "constitutional writ, unaided by statute." *Yang v. INS*, 109 F.3d 1185, 1195 (7th Cir.), *cert. denied sub nom.*, ── U.S. ──, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997); *Rusu v. Reno*, 999 F.Supp. 1204, 1210 (N.D.Ill.1998) (district court retains habeas jurisdiction, not pursuant to § 2241, but within the narrow jurisdictional scope of the Suspension Clause); *Zisimopoulos v. Reno*, 1998 WL 437266 at *1–2 (E.D.Pa. July 15, 1998) (holding that INA § 242(g) divests district court of jurisdiction to hear habeas petitions pursuant to § 2241 but finding jurisdiction over "constitutional habeas claims" if petitioner alleges a "colorable, substantial constitutional violation").

Because this court finds that jurisdiction still exists under § 2241, it need not grapple with the difficult question of whether the Suspension Clause alone, unaided by § 2241, could provide a vehicle for habeas review and what types of claims would fall under this "novel jurisdiction." *Goncalves*, 144 F.3d at 123; *Magana–Pizano*, 152 F.3d at 1221 (finding that because Congress did not expressly repeal statutory habeas, there was no need to address the "thorny problem of defining the contours of the 'free standing' constitutional writ"); *Lee*, 15 F.Supp.2d at 39 (noting that without § 2241 jurisdiction, court would be required to "imply some residual habeas jurisdiction as required by the Constitution").

11. Two district courts within this circuit have recently dismissed habeas petitions brought by non-criminal aliens holding that the 1996 amendments divested the district courts of jurisdiction to hear the petitions. *See Cabrera v. Reno*, 5 F.Supp.2d 244, 245–46 (D.N.J.1998) (dismissing habeas petition for lack of subject matter jurisdiction because 8 U.S.C. § 1252(g) divests district courts of jurisdiction to hear claims by noncriminal aliens arising from immigration decisions except as provided in 8 U.S.C. § 1252); *Abbate v. Reno*, 1998 WL 195653 (E.D.Pa. March 30, 1998) (holding that 8 U.S.C. § 1252(g) abrogates district court's power to entertain noncriminal aliens' petitions for writs of habeas corpus).

12. Addressing the question of forum, the Second Circuit suggested in a footnote in *Henderson* that were it not bound by a prior Second Circuit case, *Jean–Baptiste*, it would be inclined to find that the proper mechanism for review of final orders of removal against criminal aliens is by petition for review in the courts of appeals, instead of by § 2241 petition. *See Henderson*, 157 F.3d at 119 n. 9. Despite the newly amended INA's clear statement that final orders vis-a-vis criminal aliens cannot be reviewed under 8 U.S.C. § 1252, *see* 1252(a)(2)(C), the *Henderson* court stated that review of an agency decision may be implied if serious constitutional issues would be implicated if review were denied. *Id.* (citing *Webster v. Doe*, 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988)); *see also Richardson*, 162 F.3d at 1374–75.

Because the Third Circuit has specifically mentioned the habeas remedy as a remedy available after the AEDPA, albeit somewhat in passing, *see Salazar–Haro*, 95 F.3d at 311, this court will not hold that criminal aliens should proceed in the courts of appeals even though, in terms of consistency, requiring them to do so would make sense.

of petitioner's claims fall within that limited scope of review. One claim does.

Petitioner seeks habeas relief primarily on the ground that he was allegedly denied due process by the retroactive application of the AEDPA to his case, depriving him of a hearing on the merits of his waiver application. *See* Pet. at 5. Whether that claim is deemed to be a constitutional claim or one of statutory right, it falls within the scope of this court's jurisdiction under § 2241.[13]

If petitioner's claim is, in fact, that he was denied due process, this court clearly has jurisdiction to review it under § 2241. The Court of Appeals for the Third Circuit has not directly addressed the bounds of judicial review available under § 2241 after the AEDPA or the IIRIRA except by indicating that constitutional issues must be reviewable. *See Salazar–Haro,* 95 F.3d at 311 ("[t]o the extent ... that constitutional rights applicable to aliens may be at stake, judicial review may not be withdrawn by statute."); *Morel,* 144 F.3d at 251 (noting INS's concession that review of removal orders for "substantial constitutional error" remained after the 1996 amendments).[14]

Even were petitioner's claim one of statutory right not cloaked in constitutional garb, this court would have jurisdiction. Indeed, 28 U.S.C. § 2241 by its terms contemplates challenging a detention that is illegal under either "the Constitution or *laws of the United States....* " 28 U.S.C. § 2241(c)(1) (emphasis added). Presumably for that reason, claims of statutory right have traditionally been considered in immigration cases under § 2241. *See Goncalves,* 144 F.3d at 124 (citing numerous Supreme Court cases which have considered, on habeas, the executive branch's construction of statutory terms in the immigration context); *Henderson,* 157 F.3d at 121 (noting that "in the immigration context, review of statutory questions was deemed essential to ensuring due process"). Nothing in the language of either the AEDPA or the IIRIRA expressly limits the scope of traditional review under § 2241. *See Lee,* 15 F.Supp.2d at 41 (finding that 1996 amendments do not limit § 2241 review over statutory question of the retroactivity of AEDPA § 440(d)).

This court will, therefore, follow the lead of those courts which have held that a claim regarding the retroactive application of AEDPA § 440(d) falls within the permissible scope of review of § 2241. A majority of the courts which have considered the issue have so held. *See Goncalves,* 144 F.3d at 123–25 (finding that the scope of review under § 2241 includes reviewing the retroactive application of AEDPA § 440(d)); *Henderson,* 157 F.3d at 120 (same); *Sandoval,* 1997 WL 839465 at *8–9 (same); *Wallace,* 24 F.Supp.2d 104 (D.Mass.1998) (reviewing retroactivity of AEDPA § 440(d) pursuant to § 2241); *see also Perez,* 18 F.Supp.2d at 681–82 (finding that scope of habeas review under

---

**13.** Petitioner's subsidiary claim that he was not informed at the time he pled guilty that deportation was a possible consequence is not cognizable on habeas review for there is no right, constitutional or otherwise, to be advised of that potential collateral consequence.

**14.** This court is unpersuaded by cases holding that the scope of review of final removal orders available for criminal aliens under § 2241 is limited to "grave constitutional error or a fundamental miscarriage of justice." *See, e.g., Gutierrez–Martinez,* 989 F.Supp. at 1209; *Mbiya v. INS,* 930 F.Supp. 609, 612 (N.D.Ga.1996). This heightened standard stems from habeas review of state or federal convictions and is not analogous to situations in which petitioners have been afforded only a single level of administrative review. *See Goncalves,* 144 F.3d at 119 n. 8, 124. Unlike § 2254 or § 2255 habeas petitioners who have received the benefits of full judicial process at the trial level along with direct appeal and possible review in the Supreme Court on *certiorari,* petitioners bringing habeas petitions arising from executive detention have likely "never had their claims reviewed by any court, state or federal." *Henderson,* 157 F.3d at 120; *see also Magana–Pizano,* 152 F.3d at 1221–22 (rejecting "fundamental miscarriage of justice" standard because it refers to review in a dissimilar context, namely in cases of successive habeas petitions); *Perez,* 18 F.Supp.2d at 682 n. 9 (refusing to import narrow standard of review from §§ 2254 and 2255 into habeas within the immigration context because there has been no judicial review of alien's claims); *Lee,* 15 F.Supp.2d at 43 (rejecting "miscarriage of justice" standard for constitutional habeas review in immigration context because, unlike in the post-conviction context where "the issues raised on habeas have been, or could have been, raised previously in a court of law," there has been no prior judicial inquiry).

Suspension Clause includes question of whether AEDPA § 440(d) is retroactive); *but see Avelar Cruz,* 6 F.Supp.2d at 753–55.

It goes without saying, of course, that review under § 2241 of a claim regarding the retroactivity of AEDPA § 440(d) does not mean that "every statutory claim that an alien might raise is cognizable on habeas." *Henderson,* 157 F.3d at 122; *see also Morel,* 144 F.3d at 251–52. However, "[i]n the face of statutes [such as the AEDPA and the IIRIRA] seeking to limit jurisdiction to the fullest extent constitutionally possible," *Henderson,* 157 F.3d at 122, whether the Attorney General erred in assessing Congressional intent with respect to retroactivity is certainly reviewable. *Id.*

*C. Retroactivity of AEDPA § 440(d)*

 This court having managed to traverse a minefield of issues to arrive at this point, the merits of petitioner's primary claim can, at long last, be addressed. Petitioner claims that AEDPA § 440(d) should not have been applied retroactively to him and, therefore, that he is entitled to a hearing on his waiver application. It is unclear whether petitioner is claiming that AEDPA § 440(d) should not have been applied to him because the AEDPA was enacted after he committed or was convicted of his crimes or because it was enacted after he applied for a waiver. Given that it is possible to decide this case on the ground that AEDPA § 440(d) was not intended to apply to aliens with pending waiver applications, this court need not reach the broader issue of whether § 440(d) should apply to aliens who committed criminal conduct or were convicted prior to the enactment of the AEDPA.[15] *See Henderson,* 157 F.3d at 128 n. 28.

The Court of Appeals for the Third Circuit has not yet addressed the issue of whether the AEDPA § 440(d) should apply to a petitioner who applied for a waiver prior to the enactment of the AEDPA. Numerous other courts, however, have had occasion to address that issue. This court finds, as have the bulk of those courts, that the Attorney General's opinion in *Matter of Soriano* to the contrary, AEDPA § 440(d) should not be applied to criminal aliens who filed applications for waivers before the statute was enacted. *See, e.g., Henderson,* 157 F.3d at 130; *Goncalves,* 144 F.3d at 134; *Perez,* 18 F.Supp.2d at 682–83; *Billett,* 2 F.Supp.2d at 372–73; *but see Gutierrez–Martinez,* 989 F.Supp. at 1209–10.

This court, in reaching this conclusion, has considered whether, under a *Chevron* analysis, it was bound to defer to the Attorney General's opinion. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under *Chevron,* in examining an agency's construction of a statute, a court must first ask "whether 'the intent of Congress is clear' as to the 'precise question at issue.'" *Regions Hosp. v. Shalala,* 522 U.S. 448, ——, 118 S.Ct. 909, 915, 139 L.Ed.2d 895 (1998) (quoting *Chevron,* 467 U.S. at 842, 104 S.Ct. 2778). If the court decides, "by 'employing traditional tools of statutory construction,'" that Congress's intent is clear, "that is the end of the matter." *Id.* (quoting *Chevron,* 467 U.S. at 842, 843 n. 9, 104 S.Ct. 2778). If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* (quoting *Chevron,* 467 U.S. at 843, 104 S.Ct. 2778).

---

**15.** The Court of Appeals for the Third Circuit rejected an analogous argument in support of this broader issue in the context of an earlier INA amendment. In *Scheidemann v. INS,* 83 F.3d 1517 (3d Cir.1996), the Third Circuit evaluated an amendment to INA § 212(c) which barred waivers for aliens who had served more than five years in prison as a result of being convicted of one or more aggravated felonies ("1990 amendment"). *Id.* at 1519. The Court, along with numerous other circuits, held that the 1990 amendment could be applied to aliens who had been convicted of the enumerated offenses

prior to the amendment's enactment. *Id.* at 1526. The Court also explicitly rejected the petitioner's *ex post facto* argument. *Id.* at 1520 n. 4. As pertinent here, however, the Court limited its holding to cases "where the alien applied for discretionary relief after the effective date of the 1990 amendment." *Id.* at 1526.

As for the 1996 amendments to the INA, at least one court has cited to *Scheidemann* in rejecting the argument that AEDPA § 440(d) should not be applied retroactively to criminal conduct predating the enactment of the AEDPA. *See Avelar Cruz,* 6 F.Supp.2d at 753–55.

The *Chevron* Court pointed out that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron*, 467 U.S. at 843 n. 9, 104 S.Ct. 2778.

It is clear to this court that Congress did not intend AEDPA § 440(d) to be applied retroactively to an alien in petitioner's circumstances. *Id.* ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect."). Therefore, "that is the end of the matter." *Id.* at 842, 104 S.Ct. 2778.

In *Landgraf*, the Supreme Court set forth the requisite analysis in determining Congressional intent with reference to retroactively applying a newly-enacted federal statute to a pending matter. Acknowledging the deeply rooted "presumption against retroactive legislation," the Court stated that a court must first apply the "express command" of Congress concerning the statute's proper reach. *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Absent such a command, the court then must apply the default rules regarding retroactivity. *Id.* at 280, 114 S.Ct. 1483. The default rules inquire as to whether the application of the statute to pending matters would have a "retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If application of the statute would have a retroactive effect, the presumption against retroactivity bars its application "absent clear congressional intent favoring such a result." *Id.* If application of the statute would not have a retroactive effect—for example, if the statute affects only procedural or jurisdictional issues—the statute is to be applied to pending matters "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 277, 114 S.Ct. 1483.

The *Landgraf* analysis was modified in *Lindh* with the Court utilizing the "negative implication" doctrine to assess Congress's command concerning the reach of a statute. The *Lindh* Court rejected the argument that absent an *express* statement by Congress as to the statute's proper temporal reach, the default rules must be applied. *See Lindh v. Murphy*, 521 U.S. 320, 325, 117 S.Ct. 2059, 138 L.Ed.2d 481, (1997) (rejecting argument that "there are only two alternative sources of rules to determine [a new statute's] ultimate temporal reach: either an 'express command' from Congress or application of our *Landgraf* default rule"). Instead, the *Lindh* Court held that Congress could express its intent regarding the reach of a statute by "negative implication." *Id.* at 320, 117 S.Ct. 2059. More specifically, the Court found that Congress did not intend AEDPA §§ 101–06 to be applied retroactively not because the statute expressly so stated, but because Congress deliberately omitted retroactive language from those sections while including it in other sections, such as AEDPA § 107. *Id.* at 329–30, 117 S.Ct. 2059. The Court explained that "[n]othing, indeed, but a different intent explains the different treatment." *Id.* at 329, 117 S.Ct. 2059. The Court, therefore, did not look to the default rules because it found, by negative implication, an expression of congressional intent that dictated the reach of the relevant AEDPA sections.

The Court of Appeals for the Third Circuit has also applied the negative implication doctrine to ascertain congressional intent regarding the application of newly enacted statutes to pending matters. *See United States v. Skandier*, 125 F.3d 178 (3d Cir. 1997); *see also Mathews v. Kidder, Peabody & Co., Inc.*, 161 F.3d 156, 163 (3d Cir.1998) (examining whether "the negative inference at work in *Lindh*" showed that Congress expressed "an intent to apply the RICO Amendment only to new cases"). In *Skandier*, the Court, applying *Lindh*, found, by negative implication, that Congress intended certain AEDPA amendments to 28 U.S.C. § 153 to apply only prospectively. The Court then noted that

[b]ecause we dispose of this case on the grounds of Congressional intent, as the Supreme Court itself has found it, we need

not address matters that would be predicate to determining applicability of the [*Landgraf*] default rules.

*Id.* at 182.

Following *Chevron, Landgraf* and *Lindh*, the First and Second Circuits—the only circuits to have spoken precisely on this issue—have held that Congress did not intend AEDPA § 440(d) to be applied retroactively to criminal aliens with pending waiver applications. *See Henderson*, 157 F.3d at 128–30; *Goncalves*, 144 F.3d at 126–33. Those circuits found that the text of Title IV of the AEDPA revealed that while similar provisions such as AEDPA §§ 413 and 421 contained express statements that they were to be applied to pending applications, it was notable that AEDPA § 440(d) contained no such language. *See Henderson*, 157 F.3d at 129–30; *Goncalves*, 144 F.3d at 128–31. In addition, the legislative history of AEDPA § 440(d) supports the conclusion that Congress did not intend AEDPA § 440(d) to apply retroactively because, among other things, Congress considered a draft of AEDPA § 440(d) which included a retroactive subsection, but chose not to enact it. *See Henderson*, 157 F.3d at 130 (noting that the compromise bill that was ultimately signed

did not contain the retroactive language explicitly contained in the Senate's proposed bill); *Goncalves*, 144 F.3d at 132–33 ("Few principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language.") (citations and internal quotations omitted). Because congressional intent was clear and unambiguous, the default rules regarding retroactive effect were not addressed. In light of that clear congressional intent to the contrary, the First and Second Circuits did not defer to the Attorney General's opinion in *Matter of Soriano* and held that AEDPA § 440(d) does not apply retroactively. *See Henderson*, 157 F.3d at 130; *Goncalves*, 144 F.3d at 134.

Adopting the comprehensive and detailed analyses of the First and Second Circuits, this court holds that Congress did not intend AEDPA § 440(d) to be applied retroactively to criminal aliens such as petitioner with pending waiver applications. Moreover, the Third Circuit's application of the negative implication doctrine in *Skandier* and *Mathews* leads this court to conclude that when that Court addresses the issue, it will agree.[16]

---

**16.** Although not raising it before this court, petitioner contended before the BIA that the application of AEDPA § 440(d) to deportable aliens such as himself, as opposed to excludable aliens, denied him equal protection of the laws as guaranteed by the Due Process Clause of the Fifth Amendment. This claim appears to have some merit.

When INA § 212(c) was originally enacted, it applied differently to excludable and deportable aliens. Deportable aliens were those who lived in the United States but were subject to deportation, while excludable aliens were those who were trying to enter the United States and whom the Attorney General had reason to exclude. On its face, INA § 212(c) allowed excludable aliens to apply for discretionary waivers but made no mention of deportable aliens. In 1976, the Court of Appeals for the Second Circuit held that the difference in the application of INA § 212(c) to excludable aliens and deportable aliens raised equal protection concerns. *See Francis v. INS*, 532 F.2d 268, 269 (2d Cir.1976). The Court found that there was no rational basis for distinguishing between allowing a waiver hearing for a legal resident alien who had temporarily left the United States and one who had not, observing that "[r]eason and fairness could suggest that an alien whose ties with this country are so strong

that he has never departed after his initial entry should receive at least as much consideration as an individual who may leave and return from time to time." *Id.* at 273. Other courts of appeals, including the Third Circuit in *Katsis*, 997 F.2d at 1070, as well as the BIA, *see Matter of Silva*, Int. Dec. No. 2532 (BIA 1976) (adopting *Francis* nationwide), followed suit and adopted the reasoning of *Francis*.

As has been discussed, the AEDPA amended the INA on April 24, 1996 and abolished INA § 212(c) discretionary waivers for legal permanent residents who had been convicted of certain crimes, such as those related to controlled substances. *See* AEDPA § 440(d). More specifically, AEDPA § 440(d) amended INA § 212(c), 8 U.S.C. § 1182(c) (1994), in part, by adding the language "[t]his subsection shall not apply to an alien who is deportable by reason of having committed [a crime related to a controlled substance] ...." At first, immigration judges held that AEDPA § 440(d) barred waivers for both excludable and deportable aliens who had committed the enumerated criminal offenses. However, on May 14, 1997, the BIA held that the restriction on INA § 212(c) waivers applied only to deportable aliens because AEDPA § 440(d) used the word "deportable." *See In re Fuentes–*

### III. Conclusion

In sum, this court holds that it has jurisdiction over this petition pursuant to 28 U.S.C. § 2241 even after and in spite of the enactment of the AEDPA and the IIRIRA in 1996. Because the scope of review under § 2241 encompasses review of detentions that are in violation of the Constitution or laws of the United States, this court has considered petitioner's claim that AEDPA 440(d) should not have been applied to deprive him of a waiver hearing pursuant to pre-AEDPA § 212(c) of the INA and has concluded that Congress did not intend AEDPA § 440(d) to foreclose consideration of an application for a waiver filed prior to the enactment of the AEDPA. Because petitioner's detention is based—perhaps exclusively—on the Attorney General's erroneous determination that Congress intended the AEDPA § 440(d) to apply to aliens with pending waiver applications, petitioner's § 2241 petition is granted, and the matter is remanded for a determination on the merits of his application for a § 212(c) waiver under the standards in place prior to the enactment of the AEDPA. This court expresses no opinion, of course, as to whether such a

*Campos,* Int. Dec. No. 3318, 1997 WL 269368 (BIA May 14, 1997).

Courts have held, and this court would be inclined to agree, that, for the same reasons enunciated in *Francis* and adopted by the Third Circuit in *Kastis,* applying AEDPA § 440(d) only to deportable aliens, barring them, but not excludable aliens, from consideration for discretionary waivers violates the equal protection clause. There appears to be no rational basis for the distinction.

Only a limited group of deportable aliens denied waiver hearings would be in a position to bring an equal protection challenge, however, because the problem was solved by the IIRIRA amendments to the INA, the permanent provisions of which apply to all aliens who began removal proceedings after April 1, 1997. *See* IIRIRA § 309(c). Furthermore, AEDPA § 440(d) was only interpreted by the BIA in a manner violative of the Constitution after it released its decision in *Fuentes–Campos* on May 14, 1997. Therefore, the only aliens who could complain of an equal protection violation are those criminal aliens who were in deportation proceedings prior to April 1, 1997 and were denied waivers after the May 14, 1997 BIA decision in *Fuentes–Campos. See Avelar Cruz v. Reno,* 6 F.Supp.2d 744, 756 (N.D.Ill.1998).

waiver should be granted. An appropriate order will issue.[17]

Petitioner falls within this group of aliens. His deportation proceeding was initiated on July 12, 1994, well before the IIRIRA effectively eliminated the disparate treatment between deportable and excludable aliens with respect to waiver. Moreover, the Immigration Judge and the BIA denied petitioner a waiver in accordance with AEDPA § 440(d) on September 10, 1997 and March 30, 1998, respectively, after the BIA had issued its arguably unconstitutional interpretation of AEDPA § 440(d) in *Fuentes–Campos.* Indeed, the BIA specifically cited to *Fuentes–Campos* in response to petitioner's equal protection argument and stated that "even if we were to perceive a constitutional infirmity [INA § 212(c) as amended by AEDPA § 440(d)], we would be without authority to remedy it." Resp. Br., Exh. 5 at 2.

Because, as noted above, petitioner does not raise this issue before this court, the court need not determine whether he has been denied equal protection of the laws. In any event, petitioner has prevailed on another ground.

17. Given this disposition, petitioner's motion for appointment of counsel is denied as moot. Because petitioner is without counsel, the court anticipates and, indeed, expects that the United States Attorney will move this case on remand.